179 P.3d 1223 (2007)
2008-NMCA-030
STATE of New Mexico, Plaintiff-Appellee,
v.
Travis WILLIE, Defendant-Appellant.
No. 26,116.
Court of Appeals of New Mexico.
December 17, 2007.
Certiorari Granted February 28, 2008.
*1224 Gary K. King, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Appellee.
John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Appellant.
Certiorari Granted, No. 30,909, February 28, 2008.

OPINION
FRY, Judge.
{1} Defendant Travis Willie appeals his conviction for driving while intoxicated (DWI). Defendant argues that the State failed to lay the requisite foundation for the district court's admission of the breath alcohol test (BAT) results. Defendant bases this argument on a regulation of the State Laboratory Division (SLD), which requires the officer administering the breath test to collect a subject's breath for testing only after "ascertain[ing] that the subject has not had anything to eat, drink or smoke for at least 20 minutes prior to collection of the first breath sample." 7 NMAC 33.2.12(B)(1) (2001). Defendant contends that this regulation requires the officer to affirmatively ascertain this information, presumably by looking in Defendant's mouth or by asking Defendant if he has anything in his mouth at the beginning of the twenty-minute deprivation period. We agree with Defendant and hold that the State failed to lay a sufficient foundation for the admission of the BAT results. We reverse Defendant's conviction.
BACKGROUND
{2} In the early morning of February 26, 2005, New Mexico State Police Officer Albert Franch observed that Defendant failed to stop at a stop sign and entered an intersection, where he almost collided with the officer. Based on this erratic driving, Officer Franch initiated a traffic stop of the vehicle Defendant was driving. Officer Franch noted indicia of intoxication, and when Defendant performed poorly on field sobriety tests, Officer Franch placed Defendant under arrest for DWI. Officer Franch arrested Defendant at 1:39 a.m., handcuffed Defendant's hands behind his back, and seated Defendant in the back of the officer's car. With Defendant handcuffed in the car, Officer Franch waited for someone to come and pick up Defendant's wife and vehicle. The officer then drove with Defendant handcuffed in the back of the car to the San Juan County Jail. Although the officer did not continuously observe Defendant while the officer was driving, there is no dispute that it took about twenty minutes for him to drive to the jail. After they arrived at the detention center, Officer Franch and Defendant were "pretty much face to face" in a small room where the BAT is taken. Officer Franch was confident that Defendant did not eat, drink, or smoke either while he was in the patrol car or at the detention center, but the officer did not look into Defendant's mouth at the time he handcuffed him. Defendant's first breath test occurred at 2:35 a.m.
{3} Defendant was originally convicted in magistrate court of DWI, failure to yield, and improper turning at an intersection. Defendant appealed de novo to the district court, which convicted Defendant of the same offenses and remanded the case to magistrate court to re-sentence Defendant. Defendant now appeals his convictions to this Court. In his brief, Defendant challenges only his conviction for DWI. See State v. Gee, 2004-NMCA-042, ¶ 25, 135 N.M. 408, 89 P.3d 80 (explaining that issues not briefed are deemed abandoned).
DISCUSSION
{4} In New Mexico, it is illegal for "a person who has an alcohol concentration of eight one hundredths or more in his blood or *1225 breath to drive a vehicle." NMSA 1978, § 66-8-102(C)(1) (2005) (amended 2007). The State most often proves a violation of Section 66-8-102(C)(1) by admission of a test measuring breath alcohol concentration (BAC). Breath testing must be done in compliance with the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2007), and regulations promulgated by the SLD. See § 66-8-107. In this case, Defendant contends that the State failed to comply with 7 NMAC 33.2.12(B)(1) (2001), which provides that
[b]reath shall be collected only after the Operator or Key Operator [in this case, Officer Franch] has ascertained that the subject has not had anything to eat, drink or smoke for at least 20 minutes prior to collection of the first breath sample. If during this time the subject eats, drinks or smokes anything, another 20 minute[] deprivation period must be initiated.
Defendant appears to argue two bases for his contention that the State failed to establish compliance with this regulation: (1) because Officer Franch did not have his eyes on Defendant for the entire twenty-minute observation period, and (2) because Officer Franch did not "ascertain[] that the subject ha[d] not had anything to eat, drink or smoke" for the twenty-minute period.
{5} "We review an alleged error in the admission of evidence for an abuse of discretion." State v. Martinez, 2007-NMSC-025, ¶ 7, 141 N.M. 713, 160 P.3d 894. Upon objection, admission of evidence when foundational requirements have not been established constitutes an abuse of discretion. State v. Gardner, 1998-NMCA-160, ¶ 5, 126 N.M. 125, 967 P.2d 465. Interpretation of regulations is subject to de novo review. State v. Collins, 2005-NMCA-044, ¶ 23, 137 N.M. 353, 110 P.3d 1090 ("We review the provision [of the Administrative Code] de novo, as we would a statute."). We address each of Defendant's contentions in turn.
Continuous Observation
{6} Defendant's first contention  that Officer Franch should have continuously observed Defendant during the entire twenty-minute deprivation periodis answered by State v. Rivera, 1997-NMCA-102, ¶¶ 4-5, 124 N.M. 211, 947 P.2d 168. In that case, the defendant claimed there was insufficient evidence to support his DWI conviction because the State failed to establish that the arresting officer continuously observed the defendant for the twenty-minute period required by the regulation. Id. ¶ 4. We rejected this argument because there was testimony that the officer sat in the police car with the defendant while the officer transported the defendant to the detention center. Id. ¶ 5. This satisfied the purpose of the observation period, which is to ensure that the defendant did not do anything to compromise the breath test. Id.; see also Gardner, 1998-NMCA-160, ¶¶ 16-17, 126 N.M. 125, 967 P.2d 465 (discussing the holding in Rivera).
{7} There is similar testimony in the present case. Officer Franch testified that Defendant could not put anything in his mouth after he was handcuffed. Officer Franch was with Defendant for at least twenty minutes prior to the breath test because he was with Defendant in the police car for the twenty-minute ride to the jail and then at the detention center where the breath test was administered. Thus, as in Rivera, the officer ensured that, at least during the twenty minutes prior to the first breath test, Defendant did nothing to compromise the test. This constitutes compliance with the aspect of the regulation that appears to require observation of a subject for at least twenty minutes prior to the first breath test in order to establish that the subject is deprived of anything to eat, drink, or smoke during that time period. See Gardner, 1998-NMCA-160, ¶¶ 17-18, 126 N.M. 125, 967 P.2d 465 (discussing with approval the holding in Rivera that an officer sitting with a defendant in a car for twenty minutes while transporting the defendant to the detention center did not violate the applicable regulation's requirement for a twenty-minute observation period because the officer's actions satisfied the purpose of the regulation).
Ascertainment that Defendant Had Nothing to Eat, Drink, or Smoke
{8} Defendant argued below and now on appeal that the SLD regulation requires that the test-administering officer must ascertain that the test subject has had nothing to eat, *1226 drink, or smoke for the twenty-minute observation period immediately preceding the first breath test, and that this requirement of ascertainment must be strictly complied with. According to Defendant, strict compliance apparently would require the officer to check the subject's mouth for foreign objects at the beginning of the deprivation period, and to somehow determine whether the subject at some point in the deprivation period introduced some substance "from within" by burping or regurgitating. Defendant relies on Gardner for the idea that strict compliance is required, and on Collins to support his argument that the regulation requires that the subject's mouth be checked.
{9} In Gardner, this Court held that the State must strictly comply with regulations requiring the testing officer to observe the defendant for twenty minutes to ensure the accuracy of the test. 1998-NMCA-160, ¶¶ 9, 12, 126 N.M. 125, 967 P.2d 465. In Gardner, the defendant went to the restroom outside of the officer's observation fifteen minutes before the officer administered the BAT. Id. ¶ 3. This Court held that because the officer only observed the defendant continuously for fifteen minutes, as opposed to the twenty minutes outlined in the regulations, the officer failed to comply with the regulations and the BAT results were inadmissible. Id. ¶ 19.
{10} Strict compliance with SLD regulations is not always required, however, as our Supreme Court demonstrated in State v. Dedman, 2004-NMSC-037, 136 N.M. 561, 102 P.3d 628. In that case, the Court considered whether strict compliance with the regulatory requirement that the drawing of blood must be done by a particular method was a prerequisite to the admission of evidence of the defendant's BAC. Id. ¶ 4. The Court held that the regulation requiring the use of the "veni-puncture" method for obtaining a blood sample did not go to the reliability of the test because the appropriate method of collecting a blood sample has more to do with the safety and convenience of obtaining the sample from the subject. Id. ¶¶ 18-19. Consequently, strict compliance with the regulation was not required for admission of the BAC report. Id. ¶ 21.
{11} Our Supreme Court's latest discussion of compliance with SLD regulations is in Martinez. In Martinez, the Court essentially derived a two-part inquiry to determine whether the foundational requirements under the regulations are satisfied for admission of the BAT. 2007-NMSC-025, ¶¶ 11, 13. The first question is whether the regulation is "`accuracy-ensuring.'" Id. ¶ 11 (citing Dedman, 2004-NMSC-037, ¶ 13, 136 N.M. 561, 102 P.3d 628). If compliance with the regulation ensures accuracy, the second question is what was required of the State to satisfy the regulatory requirements. See Martinez, 2007-NMSC-025, ¶ 13, 141 N.M. 713, 160 P.3d 894. In Martinez, the Supreme Court held that Rule 11-104(A) NMRA governs the admission of the BAT results. Martinez, 2007-NMSC-025, ¶ 17, 141 N.M. 713, 160 P.3d 894. Rule 11-104(A) provides in part that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court." The ultimate holding in Martinez was that the State may use hearsay testimony regarding the SLD certification of the breath testing machinery to lay the foundation for the admission of the BAC test. 2007-NMSC-025, ¶ 23, 141 N.M. 713, 160 P.3d 894.
{12} Applying the two-part inquiry from Martinez in this case, we have held that the regulation in question is accuracy-ensuring. See Gardner, 1998-NMCA-160, ¶ 12, 126 N.M. 125, 967 P.2d 465 ("The purpose of complying with the waiting period requirements for breath alcohol tests is to ensure the accuracy of these tests."). Thus, strict compliance with the regulation is required. See id.; see also Dedman, 2004-NMSC-037, ¶ 13, 136 N.M. 561, 102 P.3d 628. The more complicated question is how the State could satisfy the regulatory requirement of ascertaining that the subject did not eat, drink, or smoke for at least twenty minutes prior to administration of the first breath test. We first determine the legal requirements of the regulation, and then we consider whether the State satisfied the regulation.
{13} For guidance in determining the meaning of the applicable regulation, we find helpful the discussion in Collins, where the defendant raised an argument similar to the one raised by Defendant in the present case. In Collins, the defendant testified at trial that he had chewing tobacco in his mouth at *1227 the time of arrest and throughout the twenty-minute period leading up to his BAC test. 2005-NMCA-044, ¶ 15, 137 N.M. 353, 110 P.3d 1090. The defendant in that case argued that the officer failed to comply with the regulation governing the twenty-minute observation period because the officer did not "ascertain" whether the defendant had anything in his mouth by looking into the defendant's mouth with a flashlight. Id. ¶ 21. The applicable regulation in place at the time the defendant in Collins was arrested, however, was different from the current regulation that is applicable in the present case. The applicable regulation in Collins required "continuous observation for at least 20 minutes prior to collection of the first breath sample. If during this time the subject regurgitates or introduces any foreign substance . . . another 20 minute[] observation period must be initiated." 2005-NMCA-044, ¶ 25, 137 N.M. 353, 110 P.3d 1090 (internal quotation marks and citation omitted). Because the language of the prior regulation, which was in effect at the time the defendant in Collins was arrested, did not include a requirement of ascertainment, this Court held that the officer was not required "to take affirmative steps to `ascertain' whether [the d]efendant had anything in his mouth" before the officer administered the BAC test. 2005-NMCA-044, ¶ 26, 137 N.M. 353, 110 P.3d 1090 (citation omitted). Therefore, the State had laid a proper foundation in Collins for the admission of the BAT results.
{14} According to Defendant, the decision in Collins suggests that this Court should interpret the presently applicable regulation as requiring an officer to take affirmative steps to ascertain whether a suspect has anything in his or her mouth before the breath test is administered. We again turn to Martinez for guidance regarding the foundation necessary to establish compliance with SLD regulations as a prerequisite for admission of BAT results.
{15} Martinez instructs us that Rule 11-104(A) applies when considering whether BAT results are "reliable enough" to be admitted. Martinez, 2007-NMSC-025, ¶ 21, 141 N.M. 713, 160 P.3d 894. To meet the requirements of Rule 11-104(A), "the trial court need only be satisfied by a preponderance of the evidence that the foundational requirement has been met." Martinez, 2007-NMSC-025, ¶ 19, 141 N.M. 713, 160 P.3d 894. In making its determination on foundation, "the trial court is not bound by the rules of evidence, except those concerning privileges." Id. ¶ 21. In Martinez, the Court concluded that the officer's testimonythat the breathalyzer sticker showed that SLD certified the machine for the date the officer conducted the testwas enough to establish such a foundation. Id. ¶ 23. In contrast, in the present case there is no evidence, hearsay or otherwise, of ascertainment. Officer Franch testified that he did not look in Defendant's mouth prior to the beginning of the twenty-minute deprivation period.
{16} As we suggested in Collins, the language of the regulation appears to require an affirmative step by the arresting officer to determine whether a suspect has something in his or her mouth at the beginning of the deprivation period. See 2005-NMCA-044, ¶ 26, 137 N.M. 353, 110 P.3d 1090. The SLD replaced the requirement that the person administering the BAT observe the suspect for twenty minutes with a requirement that the person "ascertain" that the suspect does not have "anything to eat, drink or smoke for at least 20 minutes prior to collection of the first breath sample." 7 NMAC 33.2.12(B)(1) (2001). We must presume that the SLD intended that the plain meaning of the word "ascertain" apply. See Wiard v. State Farm Mut. Auto. Ins. Co., 2002-NMCA-073, ¶ 14, 132 N.M. 470, 50 P.3d 565 (applying the plain meaning of a regulation); see also N.M. Indus. Energy Consumers v. N.M. Pub. Reg. Comm'n, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105 (stating that in interpreting statutes "[w]e look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended"). "Ascertain" means "to find out or learn for a certainty (as by examination or investigation): make sure of." Webster's Third New International Dictionary 126 (1986). One can eat something, such as a hard candy or tobacco, by holding it in one's mouth for an extended period, and thus, simply observing a suspect is not enough to ascertain whether the suspect has had anything to "eat, drink *1228 or smoke" for twenty minutes prior to the test. See People v. Miller, 219 Ill.App.3d 246, 164 Ill.Dec. 456, 583 N.E.2d 10, 12 (1991) ("Although it may be debated whether chewing or swallowing tobacco most closely resembles either smoking, eating, or drinking, the clear import of the rule is to prohibit the ingestion of organic matter. Since chewing or swallowing tobacco constitutes such activity, we find that it violates the regulations."). By requiring ascertainment, therefore, the regulation requires more than observation. It requires that the officer at the very least look in the subject's mouth or ask the subject if there is anything in his or her mouth. Following that, it would be reasonable for an officer to conclude that a subject who is handcuffed with hands behind him or her, who is confined to the backseat of a police vehicle and then to the detention center, and who is in the officer's presence during the entire time, has not put anything to eat, drink, or smoke in his or her mouth.
{17} To the extent Defendant argues that the officer must also ascertain that Defendant did not burp or regurgitate during the deprivation period, we note that it was a prior regulation, since repealed, that included this requirement. Compare 7 NMAC 33.2.12(B)(1) (2001) (requiring the operator or key operator to "ascertain[] that the subject has not had anything to eat, drink or smoke for at least 20 minutes prior to collection of the first breath sample"), with Collins, 2005-NMCA-044, ¶ 25, 137 N.M. 353, 110 P.3d 1090 (citing to the prior regulation, which provided that if "the subject regurgitates or introduces any foreign substance suspected of containing alcohol into his mouth or nose, another 20 minute[] observation period must be initiated" (internal quotation marks and citation omitted)). The current regulation, which is applicable in the present case, does not contain such a requirement.
{18} We hold that the State failed to lay the necessary foundation for admission of the BAT results. Without the requisite foundation, the district court necessarily abused its discretion in admitting the BAT results.
CONCLUSION
{19} For the foregoing reasons, we reverse Defendant's conviction of DWI.
{20} IT IS SO ORDERED.
WE CONCUR: JONATHAN B. SUTIN, Chief Judge, and IRA ROBINSON, Judge.