Certiorari Denied, No. 31,729, June 23, 2009

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-076**

**Filing Date: May 11, 2009**

**Docket No. 28,358**

**STATE OF NEW MEXICO,**

 **Plaintiff-Appellee,**

**v.**

**JAMES THOMPSON,**

 **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Carl J. Butkus, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Santa Fe, NM
Linda Yen, Assistant Public Defender
Albuquerque, NM

for Appellant

**OPINION**

**SUTIN, Judge.**

**{1}** Defendant James Thompson was convicted of driving while intoxicated (DWI) after a jury trial in the metropolitan court. The metropolitan court sentenced Defendant for aggravated DWI third offense. Defendant appealed his conviction to the district court

1

arguing that the lower court erred in admitting his breath-alcohol test (BAT) results due to lack of foundation to establish a valid twenty-minute deprivation period and due to insufficient evidence of DWI. The district court affirmed the admission of Defendant's BAT results and his conviction for DWI. The district court also alerted the parties that contrary to the metropolitan court's judgment and sentence, Defendant was not convicted of aggravated DWI third offense but instead was convicted of straight, non-aggravated DWI third offense.

**{2}** Defendant now appeals the admission of his BAT results. He asserts there was insufficient foundation to establish a valid twenty-minute deprivation period because the officer used two unsynchronized time devices to establish the beginning and end of the deprivation period and because the officer offered contradictory testimony of when and how he began and ended the deprivation period. We affirm the admission of the BAT results and remand to the metropolitan court for re-sentencing for DWI third offense.

## BACKGROUND

**{3}** Albuquerque Police Officer Joshua Otzenberger witnessed a truck make a lane change around another vehicle and then return back to the original lane of travel. It was based on that maneuver that the officer believed Defendant's truck was traveling faster than the posted speed limit. The officer conducted a traffic stop, informed Defendant of the reason for the stop, and asked Defendant to produce his driver's license, proof of insurance, and registration. Defendant gave the officer his license and registration, but he did not have proof of insurance. Officer Otzenberger noticed a strong odor of alcoholic beverage coming from Defendant's person and that Defendant had bloodshot, watery eyes.

**{4}** Based on the signs of intoxication, the officer asked Defendant to step out of his truck to perform field sobriety tests. He then checked Defendant's mouth to make sure he did not have anything in it. When Defendant was asked if he had had anything to drink that night, he stated that he had not. Defendant failed the three field sobriety tests administered by the officer. After failing the field sobriety tests and prior to his arrest, Defendant stated that he had had three beers. The officer placed Defendant under arrest for DWI.

**{5}** Before placing Defendant in the back of his patrol car, Officer Otzenberger handcuffed him with his hands behind his back and once again checked Defendant's mouth to make sure he did not have anything in it. He filled out a tow report and placed it on the windshield of Defendant's truck. As Defendant sat in the back of the patrol car, Officer Otzenberger sat in the driver's seat filling out paper work until the tow truck arrived. He then transported Defendant to the station, which was about a minute down the street. At the station, Officer Otzenberger sat in front of Defendant finishing up paper work until he administered a BAT to Defendant using an Intoxilyzer 5000 machine.

**{6}** During trial at the metropolitan court, Officer Otzenberger testified that Defendant's deprivation period began at the time of the stop when he asked Defendant to step out of the

2

car, which occurred at 9:22 p.m. Officer Otzenberger testified that the deprivation period ended about twenty-two minutes after the stop at 9:44 p.m. He further testified that Defendant did not eat, smoke, regurgitate, vomit, drink, or put anything in his mouth during this deprivation period, that Defendant was never out of his observation area, that Defendant's hands were placed securely behind his back in handcuffs, and that there was not any food, drink, or cigarettes in the back of his patrol car. He also testified that prior to administering the breath test he asked Defendant if he had anything in his mouth and also checked Defendant's mouth to confirm that there was nothing in it.

{7} When asked how he timed the deprivation period, Officer Otzenberger responded that the time he stopped Defendant was provided by the computer-aided dispatch (CAD) system, and the time for the first BAT was provided by the clock on the Intoxilyzer machine itself. During cross-examination, Officer Otzenberger conceded that the two time devices are not synchronized and when defense counsel suggested that the two time pieces might be two or three, possibly four, five minutes behind, he responded, "possibly." However, Officer Otzenberger rejected defense counsel's suggestion that the deprivation period in this case was invalid even though he could not testify with 100 percent certainty that the period was twenty minutes. During redirect, Officer Otzenberger testified that he had no reason to believe that the time on the Intoxilyzer clock and the CAD system were off by five minutes and that based on his experience the times on the two time devices were very close if not to the same minute.

{8} The defense objected to the admission of Defendant's BAT results and the metropolitan court held a side-bar conference to hear both parties' arguments regarding their admission. The recording of the side-bar conference is inaudible. The court admitted Defendant's BAT results, Officer Otzenberger read the results for the jury and for the record, and the prosecution rested.

{9} The defense moved for a directed verdict on the DWI and speeding charges based on the argument that the timing devices that Officer Otzenberger used were not synchronized and that they could have been off by several minutes. The court denied the motion. The jury found Defendant guilty of DWI. During sentencing, the court inadvertently sentenced Defendant for aggravated DWI third offense instead of straight, non-aggravated DWI third offense.

{10} Defendant appealed his conviction for DWI to the district court arguing that (1) the twenty-minute deprivation period was invalid and therefore the BAT results were erroneously admitted, and (2) there was insufficient evidence of DWI. The district court affirmed Defendant's conviction and alerted the parties that, contrary to the metropolitan court's judgment and sentence, Defendant was not convicted of aggravated DWI.

**DISCUSSION**

3

**{11}** On appeal to this Court, Defendant asserts that the admission of his BAT results was error. We examine the admission or exclusion of evidence for abuse of discretion, and the trial court's determination will not be disturbed absent a clear abuse of that discretion. *State v. Worley*, 100 N.M. 720, 723, 676 P.2d 247, 250 (1984). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995) (internal quotation marks and citation omitted).

**{12}** Breath tests taken under the Implied Consent Act, NMSA 1978, §§ 66-8-105 to -112 (1978, as amended through 2007), must comply with the regulations of the scientific laboratory division (SLD) of the Department of Health. Section 66-8-107; *State v. Gardner*, 1998-NMCA-160, ¶ 11, 126 N.M. 125, 967 P.2d 465. "Thus, when these administrative requirements are not complied with, the State has failed to lay a proper foundation of accuracy for admission." *Id.* ¶ 12. Admission of evidence for which the necessary foundation has not been laid is an abuse of discretion. *Id.* ¶ 5.

**{13}** The SLD regulation applicable to the deprivation period is 7.33.2.12(B)(1) NMAC, which provides in part that:

> Breath shall be collected only after the Operator or Key Operator has ascertained that the subject has not had anything to eat, drink or smoke for at least 20 minutes prior to collection of the first breath sample. If during this time the subject eats, drinks or smokes anything, another 20 minutes deprivation period must be initiated. The two breath samples shall be taken not more than 15 minutes apart.

"The purpose of complying with the waiting period requirements for breath alcohol tests is to ensure the accuracy of these tests." *Gardner*, 1998-NMCA-160, ¶ 12. Because the purpose of 7.33.2.12(B)(1) NMAC is to ensure accuracy of the BAT, foundational requirements must be met for the admission of BAT results. *See State v. Dedman*, 2004-NMSC-037, ¶ 13, 136 N.M. 561, 102 P.3d 628 (concluding that "the Legislature intended . . . to mandate the exclusion of test results whenever proof of compliance with a regulation intended to ensure accuracy is missing").

**{14}** Rule 11-104(A) NMRA governs the admission of BAT results, and whether the BAT results may be "admitted into evidence is a matter decided solely by the trial court and is not contingent upon its relevancy being established by other facts submitted to the jury." *State v. Martinez*, 2007-NMSC-025, ¶ 17, 141 N.M. 713, 160 P.3d 894. Rule 11-104(A) provides:

> **Questions of admissibility generally.** Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court, subject to the provisions of Paragraph B. In making its determination it is not bound by the rules of evidence except those with respect to privileges.

4

When applying Rule 11-104(A) in the consideration of the admissibility of BAT results, the trial court need only be satisfied by a preponderance of the evidence that the prosecution has met the foundational requirement. *Martinez*, 2007-NMSC-025, ¶¶ 19, 21.

**{15}** Defendant contends that the metropolitan court erred by admitting the BAT results when the State failed to meet its burden of showing compliance with the twenty-minute deprivation period. Defendant argues that Officer Otzenberger's use of two unsynchronized time devices to determine the beginning and end of the deprivation period is not a sound methodology consonant with the SLD accuracy-ensuring regulation. Defendant further argues that Officer Otzenberger gave inconsistent testimony on when and how he determined the beginning and end of the deprivation period.

**{16}** Although Officer Otzenberger testified that it was possible that the two time devices could be off by several minutes, he also testified that based on his experience, the times on the two time devices were very close if not to the same minute. He also testified that Defendant did not eat, smoke, regurgitate, vomit, drink, or put anything in his mouth during the deprivation period. Defendant was never out of the officer's observation area. Defendant's hands were placed securely behind his back in handcuffs after his arrest, and there was no food, drink, or cigarettes in the back of the patrol car. Based on this testimony, the metropolitan court could reasonably have been satisfied by a preponderance of the evidence that the foundational requirement had been met. Other jurisdictions have considered arguments similar to Defendant's. Although not bound by these rulings, we believe they are instructive. *See State v. Snuggerud*, 956 P.2d 1015, 1020 (Or. Ct. App. 1998) (holding that an officer is not required to use the same time piece to measure the beginning and end of the observation period); *State v. Edwards*, 781 P.2d 1233, 1234-35 (Or. Ct. App. 1989) (holding that the officer's use of different time pieces to begin and end the deprivation period, along with the officer's testimony that he had never noticed a discrepancy between the two timing devices was sufficient to show compliance with the fifteen-minute deprivation period required by regulation).

**{17}** Defendant relies on *State v. Willie*, 2008-NMCA-030, ¶ 16, 143 N.M. 615, 179 P.3d 1223 (filed 2007), *cert. granted*, 2008-NMCERT-002, 143 N.M. 667, 180 P.3d 674, in asserting that the deprivation period in the present case did not commence until the officer checked Defendant's mouth. Defendant asserts that Officer Otzenberger stopped Defendant at 9:22 p.m., explained to Defendant why he stopped him, requested Defendant's driver's license, insurance, and registration, asked Defendant to step out of his vehicle to conduct field sobriety tests, and then checked Defendant's mouth. Therefore, Defendant argues, several minutes passed before the deprivation period actually commenced.

**{18}** *Willie* centered on the regulation's requirement that the operator ascertain that a suspect not have anything in his or her mouth during the deprivation period. *Id.* The question of when the deprivation period began was not at issue. Because cases are not authority for propositions not considered, *Willie* does not stand for the proposition advanced by Defendant that the deprivation period commences only at the point in time that an officer

5

checks the defendant's mouth. *See Fernandez v. Farmers Ins. Co.*, 115 N.M. 622, 627, 857 P.2d 22, 27 (1993).

**{19}** Moreover, *Willie* is distinguishable because in that case there was "*no* evidence, hearsay or otherwise, of ascertainment," since the officer never looked into the defendant's mouth. 2008-NMCA-030, ¶ 15. This case is more in line with *Martinez*, where the court concluded that an officer's testimony that the breathalyzer sticker showed that SLD certified the machine for the date the officer conducted the BAT at issue sufficiently established the necessary foundation. 2007-NMSC-025, ¶ 23.

**{20}** Here, Officer Otzenberger testified that Defendant's deprivation period was twenty-two minutes, and he gave a detailed explanation of how he determined when the period began and when it ended. He also testified that, based on his experience, the two devices indicating time were very close if not to the same minute. Inconsistencies in testimony, if any, were before the court, and it is apparent that the court determined there was a preponderance of evidence to establish the necessary foundation. *See State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57 (recognizing that "the district court has the best vantage from which to resolve questions of fact and to evaluate witness credibility"). Given the facts in this case, the metropolitan court could reasonably have concluded that looking at Defendant's mouth shortly after the deprivation period began confirmed that the period of time up to that point was properly part of the deprivation period.

**{21}** Furthermore, other than the evidence provided by Officer Otzenberger's testimony during cross-examination, Defendant has not shown that the deprivation period was invalid. *See Snuggerud*, 956 P.2d at 1020 (stating that the defendant failed to identify evidence in the record showing any discrepancy between the two time pieces that the officer might have used to start and end the required fifteen-minute observation period); *cf. DeBoer v. Neb. Dep't of Motor Vehicles*, 751 N.W.2d 651, 655-56 (Neb. Ct. App. 2008) (concluding, based on substantial evidence, that the officer who performed the breath test failed to observe the driver for the required fifteen minutes before conducting the test). Reviewing the facts in the light most favorable to the prevailing party and deferring to the implicit findings of the trial court, we conclude that the court did not abuse its discretion in admitting the BAT results because Officer Otzenberger's testimony provided substantial evidence to support those findings. *See State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964 (reviewing the facts in the light most favorable to the prevailing party and deferring to the district court's factual findings as long as substantial evidence exists to support those findings).

**CONCLUSION**

**{22}** We affirm the admission of Defendant's BAT results. Because the metropolitan court inadvertently sentenced Defendant for aggravated DWI third offense, we remand the matter to the metropolitan court to re-sentence Defendant for the crime of DWI third offense and to amend the judgment and sentence accordingly.

6

**{23}** **IT IS SO ORDERED.**

_____
JONATHAN B. SUTIN, Judge

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**ROBERT E. ROBLES, Judge**

**Topic Index for _State v. Thompson,_ No. 28,358**

| | |
|---|---|
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-SE | Substantial or Sufficient Evidence |
| | |
| **EV** | **EVIDENCE** |
| EV-AE | Admissibility of Evidence |
| EV-BT | Blood/Breath Tests |
| EV-SS | Substantial or Sufficient Evidence |

7