## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number: 2009-NMSC-037**

**Filing Date: June 24, 2009**

**Docket No. 30,909**

**STATE OF NEW MEXICO,**

**Plaintiff-Petitioner,**

**v.**

**TRAVIS WILLIE**,

**Defendant-Respondent.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Sandra A. Price, District Judge**

Gary K. King, Attorney General
Margaret McLean, Assistant Attorney General
Santa Fe, NM

for Petitioner

Hugh W. Dangler, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Respondent

**CONSOLIDATED WITH:**

**Docket No. 31,104**

**STATE OF NEW MEXICO,**

**Plaintiff-Petitioner,**

**v.**

**FRANK JULIAN**,

1

**Defendant-Respondent.**

**ORIGINAL PROCEEDING ON CERTIORARI**
**Sandra A. Price, District Judge**

Gary K. King, Attorney General
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Petitioner

Hugh W. Dangler, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Respondent

## OPINION

**CHÁVEZ, Chief Justice.**

**{1}** Defendants Frank Julian and Travis Willie each waited for about an hour following their DWI arrests to submit to a breathalyzer test. They awaited the test in either the arresting officer's patrol car with their hands cuffed behind their backs, a holding cell at the police station in view of the arresting officer, or the breath testing room while in the officer's presence. After Defendants' arrests, the officers engaged them in conversation and, in due time, Defendants each provided their breath samples. At trial, the officers testified that based on these circumstances, as well as their observations, they were confident that Defendants did not put anything in their mouths or have anything to eat, drink, or smoke during this approximately one-hour period. Defendants' breath alcohol test (BrAT) results showed that they were both DWI.

**{2}** Defendants argue that despite the officers' observations of them under these conditions, the results of their BrATs were inadmissible because the arresting officers neither asked them if they had anything in their mouths nor inspected their mouths for any substances prior to taking their first breath samples.[1] They argue that the officers' failure to "ask or check" violated Regulation 7.33.2.12(B)(1) NMAC, which provides that "[b]reath shall be collected only after the Operator or Key Operator [in this case, the arresting officers] has ascertained that the subject has not had anything to eat, drink or smoke for at least 20 minutes [the deprivation period] prior to collection of the first breath sample." The State

---

[1]Throughout this opinion we refer to Defendants' argument as the "ask or check" requirement.

argues that this regulation does not require the officers to "ask or check," and instead leaves the manner and means in which an officer determines that a person has not had anything to "eat, drink or smoke" during the deprivation period up to the individual officer on a case-by-case basis. We hold that Regulation 7.33.2.12(B)(1) NMAC (the regulation) does not require BrAT machine operators to "ask or check" prior to beginning the deprivation period, and therefore we affirm Willie's conviction and remand Julian's case to the Court of Appeals.

## I.    BACKGROUND

{3}    For our purposes on review, these cases present identical relevant factual backgrounds. On separate occasions, Defendants were pulled over for driving erratically and, after showing signs of impairment, were arrested for drunk driving. At some point after their arrests, they each consented to submit to a breath alcohol test.

{4}    Defendant Willie was arrested at 1:39 a.m., at which time he was placed in a patrol car with his hands cuffed behind his back. He gave his first breath sample nearly one hour later at approximately 2:35 a.m. In the time between Willie's arrest and his first BrAT, Willie was either handcuffed in the back seat of the arresting officer's patrol car or was "face to face" with the officer in the breath testing room. Prior to administering the BrAT, the arresting officer conversed with Willie. Based on his observations of Willie under these conditions, the arresting officer testified that Willie did not eat, drink, or smoke during the time between Willie's arrest and his first BrAT. However, the arresting officer did not check Willie's mouth for any substances prior to initiating the deprivation period, and the record does not indicate whether Willie was asked at any time prior to giving his first breath sample if he had anything in his mouth. Willie's BrAT results were 0.12 at 2:35 a.m. and 0.13 at 2:38 a.m.

{5}    Defendant Julian was arrested at approximately 3:30 a.m., and he was handcuffed and placed in the patrol car at that time. Julian gave his first breath sample at about 4:20 a.m., approximately fifty minutes later. In the time between Julian's arrest and his first BrAT, Julian was either handcuffed in the back seat of the arresting deputy's patrol car or in a holding cell at the police station, where he remained handcuffed. After placing Julian under arrest, the arresting deputy engaged Julian in conversation, although the extent of that conversation was not developed at trial. Based on his observations of Julian under these conditions, the deputy testified that Julian did not put anything in his mouth after his arrest and prior to giving his first breath sample. As with Willie, however, the deputy did not check Julian's mouth for substances, and the record does not indicate whether Julian was asked at any time before giving his first breath sample if he had anything in his mouth. Julian's BrAT results were 0.16 at 4:20 a.m. and 0.16 at 4:22 a.m.

{6}    Defendants were both convicted of DWI at their de novo trials in the district court, and they appealed to the Court of Appeals, which reversed their convictions. The Court of Appeals concluded that by using the term "ascertain," "the language of the regulation

3

appears to require an affirmative step by the arresting officer to determine whether a suspect has something in his or her mouth at the beginning of the deprivation period." *State v. Willie*, 2008-NMCA-030, ¶ 16, 143 N.M. 615, 179 P.3d 1223. It therefore held that the regulation:

> [R]equires that the officer at the very least look in the subject's mouth or ask the subject if there is anything in his or her mouth [prior to beginning the deprivation period]. Following that, it would be reasonable for an officer to conclude that a subject who is handcuffed with hands behind him or her, who is confined to the backseat of a police vehicle and then to the detention center, and who is in the officer's presence during the entire time, has not put anything to eat, drink, or smoke in his or her mouth.

*Id.*; *see also State v. Julian*, No. 26,583, mem. op. at 2 (N.M. Ct. App. Apr. 14, 2008). We granted the State's petitions for writs of certiorari, which asked us to review this holding of the Court of Appeals, and consolidated these cases. *State v. Willie*, 2008-NMCERT-002, 143 N.M. 667, 180 P.3d 674; *State v. Julian*, 2008-NMCERT-006, 144 N.M. 381, 188 P.3d 105. We reverse the Court of Appeals in both cases, affirm Willie's convictions, and remand Julian's case to the Court of Appeals.

## II.     DISCUSSION

### A.     JULIAN'S ARGUMENT WAS NOT ABANDONED

**{7}**     As a preliminary issue, the State argues that Julian abandoned his argument that a BrAT operator must "ask or check" because he did not adequately brief this argument in the Court of Appeals. *See State v. Foster*, 1999-NMSC-007, ¶ 41, 126 N.M. 646, 974 P.2d 140 ("issues not addressed in an appellant's brief will be deemed abandoned") (citation omitted). The Court of Appeals concluded that this argument had not been abandoned, *Julian*, No. 26,583, mem. op. at 3, and we agree. Julian argued in his brief to the Court of Appeals that the arresting deputy did not determine whether he had anything in his mouth during the deprivation period. He also alerted the Court of Appeals, albeit in a footnote, that "[t]his issue is currently before the Court of Appeals in . . . *Willie*." While Julian would have been wiser to more thoroughly develop how the issue presented in *Willie* affected his DWI conviction, we are satisfied that Julian presented this issue to the Court of Appeals by arguing in his brief that the arresting officer "failed to comply with the mandate that the officer ensure nothing enters the suspect's mouth" during the deprivation period. Therefore, Julian did not abandon this argument in the Court of Appeals.

### B.     THE REGULATION DOES NOT REQUIRE THAT BrAT OPERATORS "ASK OR CHECK" WHETHER A SUBJECT HAS HAD ANYTHING TO EAT, DRINK, OR SMOKE PRIOR TO INITIATING THE DEPRIVATION PERIOD

**{8}**     The parties do not dispute that under *State v. Martinez* and Rule 11-104(A) NMRA, the regulation must be complied with in order for BrAT results to be admissible. 2007-NMSC-025, ¶¶ 10-11, 21, 141 N.M. 713, 160 P.3d 894 (holding that "accuracy-ensuring" regulations governing the admission of breath alcohol tests are foundational requirements governed by Rule 11-104(A) and, therefore, the trial court must be satisfied by a preponderance of the evidence that those regulations have been followed prior to admitting the BrAT results). Rather, the parties dispute what BrAT operators must do to satisfy the regulation's requirements, and they agree that to resolve this issue, we must interpret the regulation's language.

**{9}**     The interpretation of an administrative regulation is a question of law that we review de novo. *Alliance Health of Santa Teresa, Inc. v. Nat'l Presto Indus., Inc.*, 2007-NMCA-157, ¶ 18, 143 N.M. 133, 173 P.3d 55. "In interpreting sections of the Administrative Code, we apply the same rules as used in statutory interpretation." *Id.*; *accord State v. Collins*, 2005-NMCA-044, ¶ 23, 137 N.M. 353, 110 P.3d 1090. "The principal command of statutory construction is that the court should determine and effectuate the intent of the legislature, using the plain language of the statute as the primary indicator of legislative intent[.]" *State v. Ogden*, 118 N.M. 234, 242, 880 P.2d 845, 853 (1994) (citations omitted). If the plain meaning of the statute is "doubtful, ambiguous, or [if] an adherence to the literal use of the words would lead to injustice, absurdity or contradiction," we will construe the statute "according to its obvious spirit or reason." *State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064.

**{10}**     The regulation requires that:

> Breath shall be collected only after the Operator . . . *has ascertained that the subject has not had anything to eat, drink or smoke* for at least 20 minutes prior to collection of the first breath sample. If during this time the subject eats, drinks or smokes anything, another 20 minute[] deprivation period must be initiated.

Regulation 7.33.2.12(B)(1) (emphasis added). Our focus is on what the Scientific Laboratory Division of the Department of Health (SLD) intended with its use of the term "ascertain," and in accordance with our rules of construction, we begin our analysis with the plain meaning of that term. *See Ogden*, 118 N.M. at 242, 880 P.2d at 853 ("The words of a statute, including terms not statutorily defined, should be given their ordinary meaning absent clear and express legislative intention to the contrary.").

**{11}**     Defendants encourage us to adopt the Court of Appeals' construction of the regulation and require that an operator "ask or check" prior to initiating the deprivation period. In reaching its conclusion, the Court of Appeals applied the plain meaning rule and determined that to "'ascertain'" is "'to find out or learn for a certainty (as by examination or investigation): make sure of.'" *Willie*, 2008-NMCA-030, ¶ 16 (quoting *Webster's Third New International Dictionary* 126 (1986)). We agree with the Court of Appeals that by

using the term "ascertain," the SLD intended operators to be certain to some degree that a subject has not had anything to eat, drink, or smoke during the deprivation period. *See Am. Heritage Dictionary of the English Language* 104 (4th ed. 2000) (defining "ascertain" to mean "[t]o discover with certainty, as through examination or experimentation."). However, we disagree that the plain meaning of "ascertain" requires an operator to "ask or check" in every situation in order to be certain that a subject has not had anything to eat, drink, or smoke in the twenty minutes before taking the first breath sample.

{12}     The ordinary meaning of "ascertain," while suggesting the necessity to make a determination to some degree of certainty, does not address the *manner* in which such a determination is made. In addition to the definitions referenced above, to "ascertain," also means to "acquire information," "arrive at a conclusion," "determine," "remove doubt," and "verify." *Burton's Legal Thesaurus* 41 (3d ed. 1998). We cannot conclude on the basis of the regulation's language alone that asking or checking are the only ways to reach the requisite degree of certainty. Therefore, contrary to the Court of Appeals' conclusion, the plain meaning of the term "ascertain" does not prevent a BrAT operator from using a variety of methods and means to determine that a DWI suspect has not had anything to eat, drink, or smoke during the deprivation period. *Cf. State v. Snuggerud*, 956 P.2d 1015, 1020-21 (Or. Ct. App. 1998) (holding that an officer's "continuous observation" of the defendant was sufficient to satisfy the regulation that required the BrAT "operator [to be] certain that the subject has not taken anything by mouth (drinking, smoking, eating, taking medication, etc.), . . . for at least fifteen minutes before taking the test" (internal quotation marks and citation omitted)). Whether the regulation has been satisfied, i.e., whether the operator's methods and means were sufficient, is a factual determination to be made by the trial court, which must be satisfied by a preponderance of the evidence. *Martinez*, 2007-NMSC-025, ¶ 21.

{13}     Even if the term "ascertain" is subject to more than one meaning, we believe that our interpretation is most consistent with the regulation's "obvious spirit or reason," as evidenced by its historical amendments. *Davis*, 2003-NMSC-022, ¶ 6. As we mentioned above, the parties do not dispute that the purpose of the regulation is to establish the method for taking BrAT samples to ensure accurate results. To achieve this purpose, the regulation requires that a BrAT operator "ascertain[] that the subject has not had anything to eat, drink or smoke" during the deprivation period. Regulation 7.33.2.12(B)(1). Contrasting this version of the regulation with the previous version, we believe that the SLD intended to expand the scope of permissible means and methods of making this determination by not requiring specific actions on the part of BrAT operators.

{14}     The previous version of the regulation required that "'the subject has been under continuous observation for at least 20 minutes prior to collection of the first breath sample.'" *Collins*, 2005-NMCA-044, ¶ 25 (quoting the 1995 version of the regulation). We disagree with the Court of Appeals' conclusion that by replacing the term "observe" with "ascertain," the SLD intended to "require[] more than observation." *Willie*, 2008-NMCA-030, ¶ 16. *Cf. Snuggerud*, 956 P.2d at 1020-21 (holding that an officer may make certain that a "subject has not taken anything by mouth" by continuously observing the subject during the

6

deprivation period). By replacing "observation" with "ascertain," we believe the SLD intended to allow BrAT operators to determine that a subject has not had anything to eat, drink, or smoke by using a variety of means at his or her disposal, including observation, on an individualized, case-by-case basis. The changes in the regulation suggest that observation is not the only way operators may make this determination.

**{15}** Our conclusion is supported by the only other jurisdiction we found construing a regulation similar to Regulation 7.33.2.12(B)(1). In *Buchholz v. North Dakota Department of Transportation*, the North Dakota Supreme Court resolved an issue identical to the one we address in this opinion: "whether the State Toxicologist's approved method requires [breathalyzer] operators to ask subjects if they have anything in their mouths or to look in their mouths prior to administering the [BrAT]." 2002 ND 023, ¶ 8, 639 N.W.2d 490, 493. The regulation at issue in *Buchholz* required that "the operator must ascertain that the subject has had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample." *Id.* (quoting the applicable regulation). Noting that "'observing' the subject is not the only manner of 'ascertaining' that the subject had nothing to eat, drink, or smoke within twenty minutes prior to the collection of the breath sample[,]" *id.* ¶ 10, 639 N.W.2d at 494, the Court held that "the State Toxicologist's approved method does not require test operators to ask subjects if they have anything in their mouths or to check their mouths prior to administering the [breath alcohol] test." *Id.* ¶ 12, 639 N.W.2d at 494. The Court observed that "the approved method imposes no such requirements, and we decline to amend it by holding that it does." *Id.* ¶ 12, 639 N.W.2d at 494-95. We agree with the *Buchholz* Court's conclusion. The regulation does not require operators to "ask or check," and we will not impose such a requirement in light of the SLD's contrary intentions.

**{16}** In light of our construction of the regulation, we conclude that there was sufficient evidence admitted at Defendants' trials to support the court's finding by a preponderance of the evidence that the regulation had been complied with. The records show that Defendants were restrained for nearly an hour after their arrests in such a way that it would be unlikely that they could have eaten, drunk, or smoked anything. During this time, the arresting officers observed Defendants, though not continuously, and at times engaged Defendants in conversation. Under these circumstances, we believe the trial court did not abuse its discretion in finding that it was more likely than not that Defendants had not had anything to eat, drink, or smoke during the deprivation period. *See Martinez*, 2007-NMSC-025, ¶ 7 ("We review an alleged error in the admission of evidence for an abuse of discretion."). Furthermore, Defendants could have challenged the admissibility of the BrAT results by contesting their reliability independent of the State's evidence that the regulation was complied with. *See id.* ¶ 24 ("[W]e think it worth remembering that once the trial court determines that the State has met the foundational requirements for the admission of a [BrAT] card, a defendant may successfully challenge the reliability of the breath test.").

**{17}** Finally, we note that throughout his brief to this Court, Julian argues that the arresting deputy's failure to determine whether Julian belched or regurgitated during the deprivation period violated the regulation because "the biological reality is that regurgitation

can introduce substances into the mouth[,]" and "[t]hese substances can be re-ingested [, i.e., "eaten" within the context of the regulation]." In *Willie*, despite its reversal of the district court, the Court of Appeals decided against Defendants and concluded that the regulation does not require that the BrAT operator ascertain whether a subject burped or regurgitated during the deprivation period because only a prior version of the regulation included this requirement. 2008-NMCA-030, ¶ 17. Julian's conviction was reversed on the basis of the Court of Appeals' opinion in *Willie*. *Julian*, No. 26,583, mem. op. at 3. Neither Willie nor Julian petitioned this Court for certiorari review of the Court of Appeals' holding regarding the regurgitation issue. Therefore, we will not address it on review. *See* N.M. Const. art. VI, § 2 (stating that except for appeals from a judgment of the district court imposing a sentence of death or life imprisonment, this Court shall exercise appellate jurisdiction as may be provided by law); NMSA 1978, § 34-5-14(B) (1966, as amended through 1972) (stating that this Court has jurisdiction to review Court of Appeals decisions by writ of certiorari to that Court under certain circumstances).

## III.     CONCLUSION

**{18}**    We hold that the provisions of Regulation 7.33.2.12(B)(1) do not require BrAT operators to either ask a person suspected of drunk driving whether he or she has anything in his or her mouth or to inspect a suspect's mouth for food or other substances prior to initiating the required twenty-minute deprivation period. To the extent that *Collins*, 2005-NMCA-044, ¶ 26, suggests otherwise in dicta that "the officer [must] take affirmative steps to 'ascertain' whether Defendant had anything in his mouth before administering the [breath alcohol] test," it is overruled. The Court of Appeals is reversed. Defendant Willie's conviction is affirmed, and Defendant Julian's case is remanded to the Court of Appeals to consider whether the breathalyzer's calibration logs were properly admitted into evidence, an issue raised but not decided in his direct appeal to that Court. *See Julian*, No. 26,583, mem. op. at 2; *see also State v. Day*, 2008-NMSC-007, ¶¶ 11-12, 33, 143 N.M. 359, 176 P.3d 1091 (remanding case to the Court of Appeals to determine whether the defendant's DWI prosecution violated the six-month rule when that issue had been raised but not decided in the Court of Appeals and not briefed to this Court).

**{19}    IT IS SO ORDERED.**

---

                     **EDWARD L. CHÁVEZ, Chief Justice**

WE CONCUR:

---

**PATRICIO M. SERNA, Justice**

---

**PETRA JIMENEZ MAES, Justice**

8

_____

**RICHARD C. BOSSON, Justice**


_____

**CHARLES W. DANIELS, Justice**

**Topic Index for** *State v. Travis Willie*, **No. 30,909**
**consolidated with** *State v. Frank Julian*, **No. 31,104**


**AE**               **APPEAL AND ERROR**

AE-AA                Abandonment of Appeal

**AL**               **ADMINISTRATIVE LAW AND PROCEDURE**

AL-LI                Legislative Intent

**CL**               **CRIMINAL LAW**

CL-DG                Driving While Intoxicated

**EV**               **EVIDENCE**

EV-AE                Admissibility of Evidence
EV-BT                Blood/Breath Tests

**GV**               **GOVERNMENT**

GV-IA                Implied Consent Act

**ST**               **STATUTES**

ST-IP                Interpretation
ST-LI                Legislative Intent
ST-RC                Rules of Construction