This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                  **NO. 28,625**

**JOE WILLIAMS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TORRANCE COUNTY**
**Edmund H. Kase III, District Judge**

Gary K. King, Attorney General
Farhan Khan, Assistant Attorney General
Santa Fe, NM

for Appellee

Bradburn Law Office, LLC
Matthew Bradburn
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BUSTAMANTE, Judge.**

Defendant appeals his conviction for DWI, arguing that under *State v. Willie*, 2008-NMCA-030, 143 N.M. 615, 179 P.3d 1223 (filed 2007) (*Willie I)*, the State failed to meet regulatory requirements for a valid twenty-minute deprivation period before testing his breath sample, which must be satisfied for admission of his breath alcohol test (BrAT) results. After the parties briefed this issue, however, the New Mexico Supreme Court handed down its decision in *State v. Willie*, 2009-NMSC-037, 146 N.M. 481, 212 P.3d 369 (*Willie II*), which disagreed with this Court's interpretation of the relevant regulation and reversed. Applying *Willie II*, we hold that the district court did not err by ruling that the officer adequately complied with the regulation to satisfy the foundational requirements for admission of the BrAT results. We affirm.

**DISCUSSION**

Pursuant to 7.33.2.12(B)(1) NMAC (3/14/01) (the regulation), issued by the New Mexico Scientific Laboratory Division (SLD), breath samples must be collected "only after the Operator or Key Operator has ascertained that the subject has not had anything to eat, drink or smoke for at least [twenty] minutes prior to collection of the first breath sample." Interpreting the regulation, this Court in *Willie I* held that the SLD's use of the term "ascertained" indicates an intent that the person collecting the breath sample takes affirmative steps before the twenty-minute deprivation period to ask or check whether there was anything in the subject's mouth. *Willie I*, 2008-

2

NMCA-030, ¶¶ 13, 16 (observing that the SLD replaced the regulation's mandate for a twenty-minute observation period with a "requirement of ascertainment"). In *Willie II*, the Supreme Court disagreed with this Court's analysis, explaining that asking or checking are not the only means of reaching the requisite degree of certainty that a subject has not had anything to eat, drink, or smoke during the deprivation period. *Willie II*, 2009-NMSC-037, ¶¶ 11-12. The Supreme Court decided that the SLD's intent in changing the regulation from continuous observation to ascertainment was to permit BrAT operators to use a variety of means, which may include observation, to make this determination, "on an individualized, case-by-case basis." *Id.* ¶ 14.

In applying this individualized, case-by-case approach, the Supreme Court emphasized that the state need only establish by a preponderance of the evidence that the subject did not eat, drink, or smoke anything during the twenty-minute deprivation period. *Id.* ¶ 16. Because this is an issue involving foundational requirements for admission of evidence, review is for abuse of discretion. *Id.* The Supreme Court also reiterated that defendants may challenge the reliability of a breath test after its admission. *Id.*

Turning to the facts, *Willie II* consolidated two defendants' appeals: Travis Willie and Frank Julian. Willie's deprivation period lasted about an hour, during which time he either was in the backseat of a patrol car with his hands cuffed behind his back or was "face to face" with the officer in the breath testing room. *Id.* ¶ 4. The

arresting officer did not ask or check whether Willie had eaten, drunk, or smoked between the time that he was arrested and tested. *Id.* Similarly, Julian's deprivation period lasted about fifty minutes, during which time either he was handcuffed in the backseat of a patrol car or he was handcuffed in a holding cell at a police station. *Id.* ¶ 5. Upon placing Julian under arrest, the officer engaged Julian in a conversation, which was not explained at trial. *Id.* Again, the officer did not ask or check whether Julian had eaten, drunk or smoked between the time that he was arrested and tested. *Id.* Based on the officer's observations, however, he testified that Julian did not put anything in his mouth during the deprivation period. *Id.*

The Supreme Court ultimately decided that because Willie and Julian were restrained for nearly an hour after their arrests in a manner that made it unlikely that they had forbidden substances in their mouths, "the [district] court did not abuse its discretion in finding that it was more likely than not that [d]efendants had not had anything to eat, drink, or smoke during the deprivation period." *Id.* ¶ 16.

The restraints imposed on Defendant during the deprivation period in the present case are similar to those placed on the defendants in *Willie II*. Here, Defendant was arrested and placed in handcuffs double-locked behind his back and immediately put in the backseat of the arresting officer's patrol unit. When asked what a twenty-minute deprivation period is, the officer testified that it "is a time period of making sure there is no regurgitation or . . . obvious throwing up from the

4

suspect; making sure they don't have any food, drink or water or smoke . . .; to clear their mouth to make sure there is no interference with the possible testing later on." The evidence indicated that Defendant's deprivation period lasted twenty-three minutes. The officer explained that during this time Defendant had no access to food or drink, and that Defendant was not eating or chewing gum or tobacco when the officer made contact with him. At trial, the defense did not ask how the officer arrived at his conclusion that there was no substance in Defendant's mouth when he handcuffed Defendant, and the officer did not explain whether he asked Defendant or checked his mouth. Nevertheless, we acknowledge the officer testified that prior to the deprivation period he saw Defendant "doing donuts" in the median on a snow-packed road; he had an involved conversation with Defendant within an arm's length of him; and the officer observed Defendant performing field sobriety tests, which included counting forward and backward. The Supreme Court's opinion in *Willie II* does not expressly address how the officers in that case determined that the defendants had nothing in their mouths at the initiation of the deprivation period. However, under the individualized approach that it adopted, it is clear that officers are not required to ask or check. *Id.* ¶¶ 11-12. Based upon our review of the evidence, we determine that the district court did not abuse its discretion when it found that the evidence of the officer's extensive observations of Defendant prior to arrest was sufficient for the officer to arrive at his determination that Defendant was not eating just prior to his

arrest, and that he did not have anything in his mouth when he began the deprivation period.

Defendant's brief in chief emphasizes that during the deprivation period Defendant was left alone and unattended in the patrol car, while the officers were completing an inventory search of Defendant's vehicle. The law does not require continuous observation, however. *See id.* ¶ 14. Although the defendants in *Willie II* were engaged in conversation by officers during the deprivation period, they were not continuously observed, and the Supreme Court focused on the unlikelihood that foreign substances were in the defendants' mouths based on their restraints. *See id.* ¶¶ 5, 16. In this case, Defendant remained in the patrol car with his hands cuffed behind his back in the officer's presence without access to food or drink until the officer escorted him to the police station to collect a breath sample, which occurred about twenty-three minutes after his arrest. *Willie II* controls our holding under these facts. It was reasonable for the district court to find that under these circumstances it was more likely than not that Defendant had nothing to eat, drink, or smoke during the deprivation period, *see id.* ¶ 5, and therefore the foundational requirements associated with the SLD regulation were satisfied by the officer.

Lastly, we note that Defendant briefly mentions that, in addition to his inability to determine whether Defendant introduced foreign substances in his mouth, the officer did not determine whether Defendant regurgitated during the deprivation

6

period. **[BIC 11]** Defendant recognizes, however, as we did in *Willie I*, that "it was a prior regulation, since repealed, that included th[e] requirement" that the officer must determine whether the subject regurgitated during the deprivation period. *Willie I*, 2008-NMCA-030, ¶ 17. **[Id.]** The Supreme Court expressly refused to address this requirement in *Willie II*, explaining that neither Willie nor Julian petitioned for certiorari review of the issue. *Willie II*, 2009-NMSC-037, ¶ 17. Without Supreme Court guidance on this issue, we continue to apply our reasoning in *Willie I*. Defendant has made no argument indicating why we should hold that this regurgitation issue continues to be a requirement for admissibility or why we should read this requirement into the current regulation despite its repeal. Additionally, Defendant has made no argument that there was any evidence that he did, in fact, regurgitate during the deprivation period and how that would have affected his BrAT result, for purposes of either its admissibility or weight. In the absence of these arguments, we cannot say that the district court erred by rejecting Defendant's position that the BrAT results should have been excluded, because the officer did not continuously observe him to determine whether he regurgitated during the deprivation period.

**CONCLUSION**

For the reasons discussed above, we affirm the district court's denial of Defendant's motion to suppress the BrAT results.

**MICHAEL D. BUSTAMANTE, Judge**

**I CONCUR:**

**TIMOTHY L. GARCIA, Judge**

**RODERICK T. KENNEDY, Judge (specially concurring).**

**Kennedy, Judge (specially concurring).**

Anyone who ever stifled a wet burp at grandma's Thanksgiving table knows that regurgitation is not always obvious. The manufacturer of the Intoxilyzer is sufficiently worried about regurgitated alcohol in the mouth contaminating a breath test so that it built a mouth alcohol detector into their machine. SLD may regulate a concern for regurgitating stomach alcohol into the mouth out of existence. The Supreme Court might then subscribe to the mythology thus created. Neither illustrates anything of scientific substance.

However, I must concur that the opinion in this case is legally sound based on precedent we must follow, even if I must again conclude that when it comes to affirming a DWI conviction, a myth is as good as a mile.

**RODERICK T. KENNEDY, Judge**