2007-NMSC-025

160 P.3d 894

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**David S. MARTINEZ, Defendant–Respondent.**

**No. 30,122.**

Supreme Court of New Mexico.

May 18, 2007.

Gary K. King, Attorney General, Margaret McLean, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, Josephine H. Ford, Assistant Appellate Defender, Albuquerque, NM, for Respondent.

## OPINION

CHÁVEZ, Chief Justice.

{1} Defendant David Martinez challenges his conviction of driving while intoxicated. First, Martinez claims that the metropolitan court judge abused her discretion by admitting a breath-alcohol-test (BAT) card containing the test results of a breathalyser into evidence. Martinez argues that the arresting officer's testimony that he saw a certification sticker on the breathalyser indicating that the machine's certification was current was insufficient foundation for the BAT card's admissibility. Martinez also asserts that his constitutional right to confront his accusers was violated by this testimony. We reject both of his claims.

## I. BACKGROUND

{2} Early in the morning of November 25, 2004, Officer Matt Sandoval of the Albuquerque Police Department was dispatched to the scene of a one-car accident at the intersection of I–25 and I–40. Martinez was standing near the car when Officer Sandoval arrived. Officer Sandoval noticed that Martinez smelled of alcohol and was unsteady on his feet. Officer Sandoval also noticed two full miniature whiskey bottles underneath the driver's side of the car. Based on these observations, along with a conversation he had with Martinez, Officer Sandoval believed that Martinez had been driving the crashed car. After performing poorly on a set of field sobriety tests, Martinez was arrested and transported to the North Valley Substation. There, he was read the Implied Consent Act and given a BAT. Martinez was charged by criminal complaint in Bernalillo County Metropolitan Court with aggravated driving under the influence of intoxicating liquor (DUI), see NMSA 1978, § 66–8–102(D) (2004, prior to 2005 amendment), reckless driving, see NMSA 1978, § 66–8–113 (1987),

and driving with a suspended license, see NMSA 1978, § 66–5–39(A) (1993).

{3} At trial, Officer Sandoval testified that the machine he used to conduct the BAT was certified by the Scientific Laboratory Division of the Department of Health (SLD). Officer Sandoval's knowledge that the machine was certified and that its certification was current at the time of the test was gained by viewing a SLD certification sticker on the machine. When the State moved to admit the BAT card, the metropolitan court judge reserved ruling until argument could be held out of the presence of the jury. While the jury was in recess, defense counsel argued that Officer Sandoval's testimony regarding the machine's certification was insufficient to lay a proper foundation for admission of the BAT card. The main thrust of defense counsel's argument was that the BAT card could not be admitted because Officer Sandoval had no first-hand knowledge of the machine's certification. Defense counsel suggested that the person actually responsible for certification was required to testify. The State responded by claiming that Officer Sandoval's testimony that he saw a sticker on the machine showing that the machine's certification was current was sufficient for foundational purposes under Rule 11–104(A) NMRA and *State v. Onsurez*, 2002–NMCA–082, 132 N.M. 485, 51 P.3d 528. Defense counsel responded that this was "a matter of due process." The judge noted that *State v. Smith*, 1999–NMCA–154, ¶ 11, 128 N.M. 467, 994 P.2d 47, held that an officer could testify as to the contents of calibration logs without having first-hand knowledge of the actual calibrations. Finding Officer Sandoval's testimony concerning certification to be analogous, the judge allowed the BAT card to be admitted. Martinez was convicted of non-aggravated DUI[1] and reckless driving.

{4} Among other issues, Martinez appealed the admission of the BAT card to the Second Judicial District Court. See NMSA 1978, § 34–8A–6(C) (1993). After the district

---

1. The jury verdict did not reveal whether the jury relied on the "per se" provision of the DUI statute, see § 66–8–102(C), or on its "impaired to the slightest degree" provision, see § 66–8–

102(A). On appeal to the Court of Appeals, the State acknowledged that it was relying on the "per se" theory.

court affirmed the metropolitan court, Martinez appealed to the Court of Appeals. Prior to deciding Martinez's case, the Court of Appeals filed its opinion in *State v. Lizzol*, No. 25,794, 2006–NMCA–130, 2006 WL 3001105 (Aug. 28, 2006), where this issue was addressed. In *Lizzol*, the trial court concluded that an officer's testimony that he or she saw a certification sticker on the machine was *not* sufficient foundation for the admission of a BAT card. *See id.* ¶¶ 4–9. The Court of Appeals in *Lizzol* agreed, holding: "Upon proper challenge to certification, the State will be required to provide a reasonable quantum of direct admissible evidence going to the issue. Testimony that 'a certificate was attached' and the 'machine seemed to work properly' is not enough." *Id.* ¶ 39. We granted certiorari in *Lizzol* on October 12, 2006.[2] 2006–NMCERT–010, 140 N.M. 675, 146 P.3d 810. Shortly thereafter, a different panel of the Court of Appeals filed a memorandum opinion in this case. *State v. Martinez*, No. 26,137, slip op. (Ct.App. Oct. 30, 2006).

{5} In its memorandum opinion, the Court of Appeals held that *Lizzol* required it to reverse Martinez's DUI conviction. *Id.* at 8. However, two members of the three-judge panel discussed their disagreement with *Lizzol.* *See id.* at 12–15 (Pickard, J., joined by Wechsler, J., specially concurring). They believed that New Mexico's precedent, particularly *Smith*, allows foundational requirements to be met through an officer's testimony of what he or she saw in a document. *Id.* at 13–14. We granted certiorari in the instant case on December 13, 2006, but held the case in abeyance pending our opinion in *Lizzol.* 2006–NMCERT–012, 141 N.M. 105, 151 P.3d 66.

{6} Today, we file our opinion in *Lizzol* but do not reach the certification issue there because we hold that double jeopardy principles barred the State from appealing that case in the first place. *State v. Lizzol*, No. 30,019, 2007-NMSC-024, 2007 WL 1742190 (N.M. filed May 18, 2007). Thus, in this case we address the question of whether, for foundational purposes in admitting a BAT card into evidence, it is sufficient for an officer to testify that he or she saw a SLD certification sticker attached to the breathalyser and that the sticker revealed the certification to be current. We hold that it does. We also hold that Martinez did not preserve his argument that he was denied his Sixth Amendment right to confront his accusers and that no fundamental error occurred.

## II. DISCUSSION

{7} We review an alleged error in the admission of evidence for an abuse of discretion. *State v. Armendariz*, 2006–NMSC–036, ¶ 6, 140 N.M. 182, 141 P.3d 526. The lower "court's ruling will be disturbed on appeal only when the facts and circumstances of the case do not support [its] logic and effect." *State v. Harrison*, 2000–NMSC–022, ¶ 40, 129 N.M. 328, 7 P.3d 478 (quoted authority omitted).

### A. Certification of a Breathalyser Is a Foundational Requirement That Must Be Satisfied Before a BAT Card Is Admitted Into Evidence

{8} New Mexico's "per se" DUI statute provides that it is illegal for a person to drive a vehicle with "an alcohol concentration of eight one hundredths or more in his [or her] blood or breath." § 66–8–102(C)(1). The minimum breath-alcohol concentration level required for a violation of Section 66–8–102(C) is .08 grams of alcohol per 210 liters of breath. *See* NMSA 1978, § 66–8–111(D) (2005). In order to prove that a person was driving at or above this minimum threshold, the State will necessarily need to admit a BAT card.

{9} In New Mexico, "upon proper objection, there must be a threshold showing of the machine's validity as foundation for admission of the [test result]." *Plummer v. Devore*, 114 N.M. 243, 245, 836 P.2d 1264, 1266 (Ct.App.1992). *Plummer* initially established that before a court admits the result of a breath test into evidence, the State must make a threshold showing that, at the

---

2. Subsequently, on December 8, 2006, we entered an order withdrawing publication and holding the case in abeyance until our final resolution of the matter. Order No. 30,019, N.M. B. Bull., Jan. 1, 2007, at 13.

time of the test, the machine was properly calibrated and that it was functioning properly. *See id.* at 246, 836 P.2d at 1267. However, the list of foundational requirements that must be met by the State before a BAT card is admitted into evidence has grown over the years.

{10} In the year after *Plummer*, the Legislature amended the DUI statutes to provide that breath tests taken pursuant to the Implied Consent Act, NMSA 1978, §§ 66–8–105 to –112 (1978, as amended through 2003), be approved by SLD. *See* NMSA 1978, § 66–8–107 (1993). The SLD regulations are codified at 7.33.2.1–.18 NMAC. In *State v. Gardner*, the Court of Appeals held that compliance with SLD regulations is "a condition precedent to admissibility" of the result of a breath test. 1998–NMCA–160, ¶ 11, 126 N.M. 125, 967 P.2d 465. Later, the Court of Appeals held in *Onsurez* that "in cases where the defendant properly preserves the objection, the State must show that the machine used for administering a breath test has been certified by SLD." 2002–NMCA–082, ¶ 13, 132 N.M. 485, 51 P.3d 528. However, because it had not been properly preserved in *Onsurez,* the court did not reach the issue of what the State is required to show to meet this foundational requirement. *See id.* ¶ 14. This case squarely presents that question.

{11} We recently clarified in *State v. Dedman* that, to meet foundational requirements, the State does not need to show compliance with all regulations, but only with those that are "accuracy-ensuring." 2004–NMSC–037, ¶ 13, 136 N.M. 561, 102 P.3d 628. Pursuant to *Dedman,* our first question is whether the regulations governing certification are accuracy-ensuring regulations. SLD regulations require that breath-alcohol testing equipment be certified by SLD for a period of up to one year. 7.33.2.11(A)-(B) NMAC. Prior to and twice annually after initial certification, a machine must undergo calibration tests and an inspection conducted by SLD. 7.33.2.11(C) NMAC. Should the machine fail to meet SLD standards, the machine shall not be certified, or if already certified, certification shall be revoked or suspended. *Id.* Further, the machine must annually be sent to SLD for inspection.

7.33.2.11(E) NMAC. The location of the machine must be approved by SLD. 7.33.2.11(D) NMAC. If the machine is moved to a non-approved SLD site, the machine must be recertified before being put back into service. *Id.* Certification is also contingent upon: (1) monthly submission of records pertaining to all tests conducted on the machine, (2) satisfactory performance of six yearly proficiency samples, and (3) a calibration check at least every seven days and/or a .08 calibration check conducted on each subject. 7.33.2.11(G) NMAC.

{12} These regulations clearly exist to ensure that the result of a test conducted on a breathalyser is accurate. Moreover, as noted in *Onsurez,* because calibration is but a part of certification, the State cannot substitute proof of calibration for proof of certification. 2002–NMCA–082, ¶ 13, 132 N.M. 485, 51 P.3d 528. Thus, we agree that before a BAT card is admitted into evidence, the State must make a threshold showing that the machine has been certified. At the same time, we note that because certification may be revoked under certain circumstances and must be annually renewed, showing that the machine "has been certified" is not enough. Instead, before the result of a breath test is admissible, the State must also make a threshold showing that SLD certification was current at the time the test was taken.

**B. Whether the State Has Sufficiently Established That a Breathalyser Was Currently Certified Is Governed by Rule 11–104(A)**

{13} We now address the question left unanswered in *Onsurez*—how may the State satisfy this requirement? Or, as presented in this case, is this foundational requirement satisfied by the officer conducting the test giving in-court testimony that there was a certification sticker on the machine and that the sticker indicated that the machine's certification was current? In answering this question, we keep in mind the distinction between the piece of evidence the State is ultimately attempting to have admitted and the evidence the State must initially present to have that evidence admitted. *See* 21A Charles Alan Wright & Kenneth W. Graham,

Jr., *Federal Practice and Procedure* § 5052, at 47 (2d ed.2005) ("[O]ne must distinguish between the evidence the party is trying to get admitted . . . and the evidence to be used to prove its admissibility."). The distinction is critical. On one side of the line is the evidence that is to be admitted—the test result—on the other is evidence used to determine whether the test result is admitted in the first place—the foundational requirements. *See State v. Delgado,* 112 N.M. 335, 339, 815 P.2d 631, 635 (Ct.App.1991).

{14} For a violation of the "per se" DUI statute based on breath-alcohol content, the State is required to prove beyond a reasonable doubt to the jury that the defendant had a breath-alcohol level of .08 grams of alcohol per 210 liters of breath at the time he or she was driving. *See* §§ 66-8-102(C), -111(D). Since they are not elements, the State is not required to have admitted into evidence and proven beyond a reasonable doubt that the testing machine was certified, calibrated and functioning properly at the time the test was taken, or that the officer conducting the test was certified by SLD. *See* UJI 14-4503 NMRA; *see also* 7.33.2.13 NMAC. Instead, these are merely foundational requirements that the State must meet before the critical piece of evidence—the test result—is admitted into evidence.

{15} Whether a piece of evidence should be admitted based on a sufficient foundation is governed by Rule 11-104 NMRA. The pertinent provisions of that rule provide:

A. Questions of admissibility generally. Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of Paragraph B. In making its determination it is not bound by the rules of evidence except those with respect to privileges.

B. Relevancy conditioned on fact. When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

An initial question we must decide is whether Paragraph A or Paragraph B applies. That is, is the jury's consideration of the breath-test result dependent upon it being relevant once the jury finds another fact (Paragraph B), or is the admission of the test result into evidence determined solely by the trial court (Paragraph A)? *See, e.g., State v. Gano,* 92 Hawai'i 161, 988 P.2d 1153, 1163-64 (1999) (discussing distinction between Hawaii's analog to Rule 11-104(A) and Rule 11-104(B)); *see also* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 104.30[1] (Joseph M. McLaughlin ed., 2d ed.2006) (discussing Federal Rule of Evidence 104(b)).

{16} Some of New Mexico's case law suggests that Paragraph B applies. For example, quoting Rule 11-104(B) the Court of Appeals in *Plummer* established the requirement that before a breath-test result is admitted as evidence, "there must be 'evidence sufficient to support a finding' that the particular test was capable of producing valid results." 114 N.M. at 245-46, 836 P.2d at 1266-67. An implication also arises in *State v. Ruiz,* 120 N.M. 534, 903 P.2d 845 (Ct.App. 1995), that Rule 11-104(B) is the proper framework from which to view the admissibility of a breath-test result. In that case, the defendant argued that the trial court had erred in admitting the calibration logs into evidence because the logs were hearsay. The State responded that the calibration logs fell within the business-records exception to the hearsay rule. *Id.* at 536, 903 P.2d at 847. Relying on *State v. Christian,* 119 N.M. 776, 780-81, 895 P.2d 676, 680-81 (Ct.App.1995), which held that blood-alcohol test results are admissible as business records, the court in *Ruiz* held that calibration logs of breathalysers are admissible as business records as well. 120 N.M. at 536-38, 903 P.2d at 847-49. Thus, one might assume after reading *Ruiz* that Paragraph B of Rule 11-104 applies since the foundational evidence was actually submitted to the jury in that case.

{17} We have never fully explored the distinction between Paragraphs A and B of Rule 11-104. After considering relevant treatises discussing the Federal Rules of Evidence, *see Estate of Romero ex rel. Romero*

*v. City of Santa Fe,* 2006–NMSC–028, ¶ 8, 139 N.M. 671, 137 P.3d 611 ("The New Mexico Rules of Evidence generally follow the federal rules of evidence . . . ."), as well as other states' counterparts and cases from other jurisdictions, we hold, contrary to the implication arising from *Plummer* and *Ruiz,* that Rule 11–104(A)—not 11–104(B)—governs the admissibility of a BAT card. Whether a BAT card may be admitted into evidence is a matter decided solely by the trial court and is not contingent upon its relevancy being established by other facts submitted to the jury.

{18} Wright and Graham explain the two parts of the rule governing foundational evidence as "an allocation of responsibility between judge and jury for the proper selection of evidence to be used in deciding the case." Wright & Graham, *supra,* § 5052.1, at 54–55 (quoted authority omitted). Paragraphs A and B have been described as creating a distinction between "competency" and "relevancy." *See United States v. James,* 590 F.2d 575, 579 (5th Cir.1979), *overruled on other grounds by United States v. Chestang,* 849 F.2d 528, 531 (11th Cir.1988); *Gano,* 988 P.2d at 1164. That is, the trial court is to determine whether evidence is competent and, thus, admissible, whereas jurors are to determine "preliminary questions as to the conditional relevancy of the evidence." *James,* 590 F.2d at 579; *see Gano,* 988 P.2d at 1164. "Competence, in this context, means 'whether evidence is admissible under one of the policy-based exclusionary rules, such as the rule against hearsay.'" *Gano,* 988 P.2d at 1164 (quoting *State v. Carlson,* 311 Or. 201, 808 P.2d 1002, 1008 (1991)).

{19} In other words, under Rule 11–104(A) "[e]ven though evidence is clearly relevant, it may still be subject to attacks on its admissibility based on fundamental policy decisions that demand exclusion of privileged information, testimony by unqualified or incompetent witnesses, and *inherently unreliable evidence,* and it is the responsibility of the judge to make these determinations." Weinstein & Berger, *supra,* § 104.10, at 104–12 (emphasis added). When using Rule 11–104(A) to determine whether evidence is admissible, the trial court need only be satisfied by a pre-

ponderance of the evidence that the foundational requirement has been met. *See State v. Roybal,* 107 N.M. 309, 311, 756 P.2d 1204, 1206 (Ct.App.1988) (discussing *Bourjaily v. United States,* 483 U.S. 171, 175–79, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987)). Moreover, in making its determination, the rules of evidence, except those concerning privileges, do not apply. Rule 11–1101(D)(1) NMRA.

{20} On the other hand, Rule 11–104(B)'s concern is with ensuring that "a given piece of evidence be what its proponent claims." *United States v. Sliker,* 751 F.2d 477, 499 (2d Cir.1984). Thus, under this rule the jury is charged with determining such issues as whether evidence presented is within the realm of the testifier's personal knowledge and whether a document is authentic. If the jury answers either of these questions in the negative, then the evidence is irrelevant and the jury will not consider it even though it may have already been admitted into evidence contingent on these facts later being established. *See* Wright & Graham, *supra,* § 5054.1, at 137–41. If the trial court were to determine for itself the issues of personal knowledge and authenticity, it would usurp the important function of the jury and infringe upon a party's right to a jury trial. *See id.* § 5052.1, at 57. Rule 11–104(B) provides that the trial court is to admit evidence depending on the fulfillment of a condition of fact when there is "evidence sufficient to support a finding of the fulfillment of the condition." Under this standard, the trial court does not determine whether the conditional fact has been proven by a preponderance of the evidence. Instead, "[t]he court simply examines all the evidence in the case and decides *whether the jury could reasonably find* the conditional fact . . . by a preponderance of the evidence." *Huddleston v. United States,* 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (emphasis added).

■ {21} When considering whether the result of a BAT is reliable enough to be entered into evidence, Rule 11–104(A) governs and Rule 11–104(B) does not. The admission of evidence based on its reliability or lack thereof is a policy-based decision the

judge, and the judge alone, makes. To the extent *Plummer's* quotation of Rule 11–104(B) suggests otherwise, it is overruled. Furthermore, *Ruiz* should not be read to imply that it is necessary to submit foundational evidence to the jury. Thus, in considering whether a foundational requirement has been met—in this case whether a breathalyser was certified by SLD at the time a given test was taken—the trial court must satisfy itself by a preponderance of the ·evidence. Furthermore, when making its decision the trial court is not bound by the rules of evidence, except those concerning privileges. Thus, the trial court may consider hearsay. *See Smith,* 1999–NMCA–154, ¶ 11, 128 N.M. 467, 994 P.2d 47 (holding that the foundational requirement of calibration was satisfied when the officer conducting the test testified as to his experience and "that the log attached to the machine indicated that it had been calibrated within the previous seven days").

■ {22} Martinez argues that Rule 11–104(B) should apply because, according to him, Officer Sandoval must have had personal knowledge of the *certification process.* The Court of Appeals attempted to distinguish *Smith* on similar grounds:

> As we noted in *Lizzol,* the challenge in *Smith* was to the officer's testimony about the breath machine's calibration, not about its certification, and the officer in *Smith* demonstrated sufficient personal knowledge about calibration to justify admission of the breath card. *Lizzol,* 2006–NMCA–130, ¶ 37. By contrast, Sandoval did not testify to any personal knowledge about certification.

*Martinez,* No. 26,137, slip op. at 8. Yet, under Rule 11–104(B) the issue is whether the person giving the testimony has personal knowledge of *what is being admitted into evidence.* In this case, that is the BAT card, not evidence of certification. Even though the officer in *Smith* had "personal knowledge" of the calibration process because he "explained how the machine performed its self-calibration upon startup," 1999–NMCA–154, ¶ 11, 128 N.M. 467, 994 P.2d 47, that was immaterial. In both *Smith* and this case, the officers conducting the breath test testified as to what they saw in a document without actually having participated in the process that generated the information. Whether the officer understands the underlying process that led to the document's content does not matter for foundational purposes—what matters is simply the content of the document.

{23} Apparently, Martinez's argument rests upon his assertion that certification is a "core" fact instead of a preliminary fact. Although Martinez does not expound on what constitutes a "core" fact, it appears that he believes certification is an element that must be proven to the fact-finder. There is nothing "core" about a breathalyser's certification. The essential elements of a "per se" DUI charge are: (1) operating a motor vehicle, (2) in New Mexico, (3) with a .08 alcohol concentration in the blood or breath. UJI 14–4503 NMRA. Certification is but a foundational requirement for the admission of evidence tending to prove the third element. As discussed above, Rule 11–104(A) governs in this situation and the rules of evidence, except those concerning privileges, do not apply. Here, Officer Sandoval presented hearsay evidence—he saw an SLD sticker on the machine indicating that it was certified by SLD when he conducted the test. Given that foundational requirements need only be met by a preponderance of the evidence, we cannot say that admitting the BAT card in this case was "clearly contrary to logic and the facts and circumstances of the case." *See Armendariz,* 2006–NMSC–036, ¶ 6, 140 N.M. 182, 141 P.3d 526.

{24} Finally, we think it worth remembering that once the trial court determines that the State has met the foundational requirements for the admission of a BAT card, a defendant may successfully challenge the reliability of the breath test. *See Dedman,* 2004–NMSC–037, ¶ 44, 136 N.M. 561, 102 P.3d 628 ("[T]he opponent of admissibility of a report has the burden to show that the report should be excluded for lack of trustworthiness."). As far as certification goes, a defendant is entitled to obtain records pertaining to a machine's certification in discovery if he or she chooses. Also, on its website, http://www.sld.state.nm.us/alc/agency.asp, SLD maintains a list of all currently

certified machines. Based on this discovery information, a defendant may be able to critically challenge an officer's foundational testimony concerning certification. Since Martinez made no such attempt here, Officer Sandoval's testimony went unchallenged and the judge did not abuse her discretion in admitting the BAT card.

## C. Martinez Did Not Preserve His Confrontation Clause Claim

 {25} Martinez claims that his Sixth Amendment right of confrontation was violated when he was not given the opportunity to cross-examine anyone who had "actual knowledge" of the machine's certification. We conclude that this issue is not preserved for our review. At trial, defense counsel simply argued that it was a "matter of due process." Martinez argues that this was sufficient for preservation since the Fourteenth Amendment makes the Confrontation Clause of the Sixth Amendment applicable to our state. *See State v. Lopez*, 2000–NMSC–003, ¶ 14, 128 N.M. 410, 993 P.2d 727 (citing *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965)). We disagree. Although the right to confrontation is an element of due process guaranteed by the Fourteenth Amendment, merely mentioning "due process" was not sufficient to alert the judge to a Confrontation Clause claim and did not fairly invoke a ruling. *See* Rule 12–216 NMRA; *State v. Alingog*, 117 N.M. 756, 759–60, 877 P.2d 562, 565–66 (1994). Moreover, in reviewing for fundamental error, Martinez's claim fails. *See Campos v. Bravo*, 2007–NMSC–021, ¶ 18 (discussing fundamental error). The protections afforded by the Confrontation Clause do not extend to preliminary questions of fact. *Roybal*, 107 N.M. at 311–12, 756 P.2d at 1206–07; *see also Dedman*, 2004–NMSC–037, ¶¶ 25–45, 136 N.M. 561, 102 P.3d 628 (performing an in-depth analysis of the Confrontation Clause and concluding that the defendant's right to confront his accusers was not violated by the admission of a blood-alcohol report).

## III. CONCLUSION

{26} The metropolitan court judge did not abuse her discretion in admitting the BAT card after determining that the State had laid sufficient foundation. Martinez did not preserve his argument that he was denied his Sixth Amendment right to confront his accusers and no fundamental error occurred. The Court of Appeals is reversed and the case is remanded to the Bernalillo County Metropolitan Court.

{27} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, PATRICIO M. SERNA, PETRA JIMENEZ MAES, and RICHARD C. BOSSON, Justices.