This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41660**

**STATE OF NEW MEXICO,**

　　Plaintiff-Appellee,

v.

**ANDRES GONZALES-GAYTAN,**

　　Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jennifer Wernersbach, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Eric Orona, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bowles Law Firm
Jason Bowles
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**WRAY, Judge.**

**{1}**　A jury found Defendant guilty on seven counts, contrary to NMSA 1978, Section 30-9-11(D)(1) (2009); NMSA 1978, Section 30-28-1 (1963, amended 2024); NMSA 1978, Section 30-9-13 (2003), and NMSA 1978, Section 30-24-3 (1997). At trial, the district court admitted testimony about the results of two medical tests without testimony from a witness who conducted the laboratory tests that produced the result. Defendant argues on appeal that the admission of the results was unconstitutional and contrary to

the rules of evidence. Defendant also challenges the sufficiency of the evidence supporting all of the convictions and maintains that the "numerous violations of Defendant's constitutional rights" by this Court and the district court "amount to fundamental error." We affirm.

## DISCUSSION

**{2}** Because this is a memorandum opinion, prepared for the benefit of the parties, we limit our factual recitation to that necessary to explain our analysis of each of Defendant's three issues on appeal.

## I. The Admission of the Test Results

**{3}** Defendant's primary challenges involve (1) testimony about a positive chlamydia test result for Child-victim's mother (Mother); and (2) the testimony of two medical experts, a treating physician and a former clinical director of the clinic where Child was examined, in relation to Child's test results. Defendant argues that the admission of both test results violated the right to confrontation and other constitutional protections and that Child's test results were (1) insufficiently reliable scientific evidence, (2) without proper chain of custody testimony, (3) hearsay unaccompanied by an exception to allow its admission, and (4) unauthenticated by a witness with first-hand knowledge. We review each of these issues in turn, the constitutional questions de novo and the questions about the admission of evidence for abuse of discretion. *See State v. Maestas*, 2018-NMSC-010, ¶ 21, 412 P.3d 79.

## A. The Right to Confrontation

**{4}** Regarding the right to confrontation, Defendant contends that the State did not establish the reliability of the test results and he was denied the right to cross-examination because the State did not produce a witness from the testing laboratory who could "testify as to the specific procedures implemented" and used. It is well established that "[t]he most important element of the right of confrontation is the right of cross-examination," because "[c]ross-examination is the principal means by which the believability of a witness and the truth of [the] testimony are tested." *State v. Montoya*, 2014-NMSC-032, ¶ 21, 333 P.3d 935 (internal quotation marks and citations omitted). The Confrontation Clause, however, "applies only to testimonial hearsay." *Smith v. Arizona*, 602 U.S. 779, 784 (2024) (internal quotation marks and citation omitted). The phrase "testimonial hearsay" imposes two limits on the reach of the Confrontation Clause: (1) only hearsay—"meaning, out-of-court statements offered to prove the truth of the matter asserted"—is barred; and (2) only "testimonial statements" are prohibited. *Id.* at 784-85 (internal quotation marks and citation omitted). We turn first to whether the challenged testimony was hearsay.

**{5}** While Mother's testimony was not hearsay for the purposes of the Confrontation Clause, the treating physician's testimony was. This Court has already decided one appeal in this case and in relevant part, determined that Mother's testimony about her

medical condition would not be hearsay. *See State v. Gonzales-Gaytan*, A-1-CA-38793, mem. op. ¶ 18 (N.M. Ct. App. Nov. 10, 2021) (nonprecedential). Defendant did not renew an objection to this testimony on other grounds when the matter was tried after the first appeal. *See id.* Because Mother's testimony was not hearsay, it does not implicate the Confrontation Clause. *See Smith*, 602 U.S. at 785. The treating physician's testimony, however, that the samples tested positive for chlamydia, was hearsay because the treating physician conveyed the out-of-court opinions of unknown lab technicians. *See id.* (describing hearsay). Even though a hearsay exception might apply to admit the testimony under the rules of evidence, *see* Rule 11-803(4) NMRA, we must, for the purposes of Confrontation Clause analysis, continue and consider whether the hearsay statement is testimonial. *See State v. Romero*, 2006-NMCA-045, ¶ 58, 139 N.M. 386, 133 P.3d 842 (explaining that the admission of a hearsay statement may violate the Confrontation Clause even though the statement falls within a hearsay exception).

**{6}** Though the treating physician's statement was hearsay for the purposes of the Confrontation Clause, the test results were not testimonial. The term "testimonial" has been exhaustively discussed but not defined. Broadly, "the label applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations" or when "the primary purpose" of the statement "was to create an out-of-court substitute for trial testimony." *State v. Tsosie*, 2022-NMSC-017, ¶¶ 26, 40, 516 P.3d 1116 (internal quotation marks and citations omitted). The out-of-court statement of any unknown laboratory analyst that Child's tests results were positive was not made within a prior hearing or elicited during a police interrogation. The testimony at trial further demonstrated that the primary purpose of the statement was to convey information from the laboratory to the treating physician for Child's medical treatment. *See id.* ¶ 69 (holding that "a significant factor" in determining whether a statement is testimonial is "whether the information sought was important to enable the provision of medical care"). The treating physician testified that Child was tested because she was at risk for a sexually transmitted infection, chlamydia, which is often asymptomatic and if left untreated, can have negative long-term effects. Here, the treating physician treated Child for chlamydia. To the extent that the test was ordered as part of a forensic exam, the former clinic director testified that because of the characteristics of chlamydia, a positive chlamydia result in an alleged victim cannot identify a perpetrator—even if a suspect also tested positive for chlamydia. For these reasons, we conclude that the test results were not testimonial.

## B.    The Expert Testimony

**{7}** Next, Defendant argues that without a witness with first-hand knowledge of the procedures used to test the samples, the State could not establish that the test results were sufficiently reliable to be admitted. On "proper objection, there must be a threshold showing," by a preponderance of the evidence, that a procedure was performed in a valid and reliable manner. *Cf. State v. Martinez*, 2007-NMSC-025, ¶ 9, 141 N.M. 713, 160 P.3d 894 (internal quotation marks and citation omitted); *see also State v. Espinoza*, 2023-NMCA-012, ¶¶ 12-13, 525 P.3d 429 (distinguishing between the

foundational evidence that supports the result of a scientific test and the result itself). Defendant acknowledges that the former clinical director testified about the procedures used generally by the laboratory to ensure accurate test results. Nevertheless, Defendant maintains that "the accuracy of the results" depends on compliance "with a myriad of procedures" and the State did not demonstrate that compliance "in this particular case" and therefore "failed to establish the requisite foundation for admissibility pursuant to [Rule] 11-702 [NMRA]." The State responds that Defendant stipulated to the foundation for the test result and that regardless, the foundation was adequate. We agree with the State.

{8}     The test results were admitted without objection to foundation. Defendant filed an early motion to require the State to produce a laboratory witness, which the district court denied provided that the State could provide a foundational witness. Defendant filed another motion in limine and in relevant part argued again that a laboratory witness was necessary to establish a foundation for the admission of the medical test results under Rule 11-702. The district court excluded the results on hearsay, *see* Rule 11-802 NMRA, and relevance grounds, *see* Rule 11-403 NMRA,—and not based on Rule 11-702. The State appealed. After this Court determined that the test results were relevant and not inadmissible hearsay, the parties returned to the district court, addressed the still-pending motion in limine, and agreed that the Rule 11-702 issue had "also already been addressed by the appellate court." The district court entered an order on the motion in limine and noted the parties' agreement. At trial, Defendant made no foundational objection to the treating doctor's testimony about the test results. Based on these events, Defendant did not invoke a ruling from the district court regarding the sufficiency of the foundation to support the admission of the test results. *See* Rule 12-321(A) NMRA (requiring that "[t]o preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked").

{9}     We also agree with the State that the two experts provided sufficient foundation for the admission of the test results. Both experts testified that the only way for a sample to show a false positive for chlamydia is if chlamydia is introduced to a sample. The former clinical director testified that she was familiar with the laboratory's processes and certifications. She explained that (1) confirmatory testing processes result in a false positive rate of near zero, and (2) a control test ensures that no cross-contamination occurs in samples that are tested. If a control test comes back "indeterminant or positive," the sample is discarded and the test is restarted. The treating physician testified that in the present case, the confirmatory tests were positive. She further explained that in the event of an unexpectedly high frequency of positives from a cohort of samples, test results are flagged for inspection. Based on this evidence, the State established by a preponderance of the evidence that the testing protocols include accuracy checks, and in the present case, no evidence indicated that the sample was contaminated. *See Espinoza*, 2023-NMCA-012, ¶ 13. As a result, even if Defendant had preserved the issue, the district court did not abuse its discretion by admitting the test results. *See Martinez*, 2007-NMSC-025, ¶ 7 ("We review an alleged error in the admission of evidence for an abuse of discretion.").

## C.     The Remaining Evidentiary Objections

**{10}**     Defendant additionally challenges the admissibility of Child's test results based on the view that the State did not sufficiently establish (1) the chain of custody, (2) any hearsay exception, or (3) the authenticity of the result. Reviewing for abuse of discretion, *see Martinez*, 2007-NMSC-025, ¶ 7, we discern no error.

**{11}**     First, the treating physician established the chain of custody for Child's sample by a preponderance of the evidence. *See State v. Peters*, 1997-NMCA-084, ¶ 26, 123 N.M. 667, 944 P.2d 896. The treating physician swabbed Child and handed the sample to a medical assistant, who placed the sample in a tube. The treating physician directed Child to obtain a "dirty" urine sample. Both samples were sent to the lab and tested. The test results were sent electronically to the doctor. The treating physician recognized the results as relating to the samples that were taken from Child by referencing Child's unique medical record number. Any further "[q]uestions concerning a possible gap in the chain of custody affect[] the weight of the evidence, not its admissibility." *Id.*

**{12}**     Second, the test results were admissible hearsay under Rule 11-803(4), which permits the admission of hearsay if the statement was "made for—and is reasonably pertinent to—medical diagnosis or treatment." As we have explained, the unknown laboratory analyst communicated the statement that the test results were positive to the treating physician so that Child would receive treatment for the condition. Such a communication serves the "pertinence" rationale that underlies Rule 11-803(4), which our Supreme Court explained as follows: "[I]f a statement is pertinent to a medical condition, such that a medical care provider reasonably relies upon it in arriving at a diagnosis or treatment, the statement is deemed sufficiently reliable to overcome hearsay concerns." *State v. Mendez*, 2010-NMSC-044, ¶ 21, 148 N.M. 761, 242 P.3d 328; *see id.* ¶ 22 (observing that in New Mexico, "the 'pertinence' rationale [is] independently sufficient to establish trustworthiness and admissibility under Rule 11-803[(4)]"). As noted earlier, Child was treated for chlamydia, which permits an inference that the treating physician reasonably relied on the test results to arrive at a diagnosis and treatment. The test results were therefore admissible hearsay.

**{13}**     Third, the treating physician properly authenticated the testimony about the test result.[1] Rule 11-901(A) NMRA requires that the proponent of "an item of evidence . . . must produce evidence sufficient to support a finding that the item is what the proponent claims it is." The treating physician had knowledge of obtaining the samples, ordering the tests, and receiving the test results. *See* Rule 11-901(B)(1). The treating physician testified that she received the test results from the laboratory through the electronic records system because she was the physician who ordered the test, and as we explained, she identified the results as relating to Child based on Child's unique medical record number. The treating physician was thus "a witness with knowledge" that the positive test results were what they purported to be— positive test results for Child from the laboratory. *See id.*

---

[1]The laboratory report document was not admitted, and we therefore need not consider its authentication.

## II. The Sufficiency of the Evidence

**{14}** Defendant contends that the verdicts were unsupported because the only evidence was (1) Child's testimony, and (2) the treating physician's testimony, which Defendant characterizes as a "recitation of virtually everything [Child] reported during" the physician's exam. Defendant mounts no challenge to the treating physician's testimony apart from those we have already considered and resolved in the State's favor. As a result, we consider in the light most favorable to the seven guilty verdicts whether the testimony of both witnesses supported the convictions. *See State v. Mireles*, 1995-NMCA-026, ¶ 8, 119 N.M. 595, 893 P.2d 491 (explaining that "[w]e view the evidence in the light most favorable to supporting the verdict and resolve all conflicts and indulge all inferences in favor of upholding the verdict" and "do not weigh the evidence or substitute our judgment for that of the jury" (internal quotation marks and citation omitted)).

**{15}** The evidence supported the guilty verdicts. Child testified that Defendant penetrated her vaginally and anally, *see* § 30-9-11(D)(1), tried to penetrate her two other times, *see* § 30-28-1, and told her not to tell or she would get in trouble, *see* § 30-24-3. The treating physician testified that Child further reported that Defendant touched her on the vagina and buttocks both over and underneath her clothing. *See* § 30-9-13. This evidence is sufficient to support the convictions.

## III. A Fair Trial

**{16}** Last, we address Defendant's arguments that the admission of the test results violated the right to due process, the right to a fair trial, and the right to an impartial jury, as well as the argument that fundamental error resulted from "numerous violations" of Defendant's constitutional rights. We have substantively addressed the issues raised by Defendant on appeal on each of the grounds asserted and determined that on those bases and on the record before us, no error occurred and the jury's verdict is supported by the evidence. On those bases, we therefore conclude that Defendant received due process and a fair trial from an impartial jury and that no fundamental error unmasks "the obvious innocence" of Defendant or makes the convictions "fundamentally unfair notwithstanding the apparent guilt of the accused." *See State v. Sivils*, 2023-NMCA-080, ¶ 9, 538 P.3d 126 (internal quotation marks and citation omitted).

## CONCLUSION

**{17}** We affirm.

**{18} IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**