This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40881**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**FELICIA SARRACINO,**

      Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNALILLO COUNTY**
**Renee Torres, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**YOHALEM, Judge.**

**{1}** Defendant Felicia Sarracino appeals her conviction in metropolitan court for driving while intoxicated (DWI) (first offense), contrary to NMSA 1978, Section 66-8-102(A), (C) (2016). Defendant argues as follows: (1) the admission of two segments of a recorded 911 call made by Nicole Koburi, an employee of the store where Defendant also worked, violated the Confrontation Clause of the Sixth Amendment to the United States Constitution; (2) alternatively, the admission of the two segments of the 911

recording constituted inadmissible hearsay; and (3) the metropolitan court abused its discretion in admitting Defendant's breath alcohol test results without sufficient evidence that the collection and testing of the breath sample complied with state department of health regulations. For the reasons that follow, we affirm.

**BACKGROUND**

{2}     On July 19, 2022, Koburi made a 911 call at 6:50 p.m. from the parking lot of a store in Albuquerque where Defendant and Koburi were both employed. Koburi reported to the 911 operator that someone (later identified as Defendant) had gotten extremely drunk in the parking lot and had been passed out in a hot car for over an hour. Koburi reported that Defendant had just regained consciousness, was still in her car, and was "belligerently drunk." At that point, the 911 operator asked whether an ambulance was needed, and Koburi responded that she wasn't sure. The operator then turned to questioning Koburi about whether Defendant was going to drive. Koburi responded that Defendant had the keys to her car, the car was running, and that "she's refus[ed] to get out and she [was] screaming and throwing things." Loud yelling could be heard in the background. The 911 operator also asked about the vehicle's make and model.

{3}     The next segment of the call was excluded from evidence by the district court and is not at issue in this appeal. The second segment admitted into evidence begins with Koburi yelling, "Felicia, stop!" Koburi then stated, "She is running into cars. Oh my god. She just ran into somebody's car in the parking lot." The remainder of this two and one-half minute segment included Koburi describing Defendant exiting the parking lot and driving onto Lomas Boulevard. The operator asked if Defendant was going the wrong way. Koburi said that Defendant had started out driving into oncoming traffic, but then reported that she saw the car return to the correct lane. Koburi told the operator the direction Defendant was driving in response to a question. After Koburi told the operator that she could not see the car any longer, she was asked if she knew Defendant's home address and if she remembered her license plate information. The segment ended there.

{4}     Shortly after 7:00 p.m., ten minutes after the Koburi made the 911 call, Albuquerque Police Department (APD) officers located Defendant sleeping in a parked car about three blocks away from the store parking lot where Koburi had made the 911 call. Defendant's car was a Black Ford Fusion, the car make and model identified by Koburi.

{5}     Koburi did not testify at trial. She was excluded by the metropolitan court as a witness because the State was unable to secure her participation in required interviews. The State offered a recording of the 911 call into evidence. Defense counsel argued for suppression of that recording in light of Koburi's exclusion as a witness, arguing that its admission violated the Confrontation Clause and was hearsay that did not satisfy any exception to the hearsay rule. After reviewing the recording and the parties' arguments, the metropolitan court admitted the first minute and one-half of the recording and the second two-and-one-half minute segment. The metropolitan court concluded that there

was no Confrontation Clause violation, that the first minute and one-half was admissible under the hearsay exception for present sense impressions, Rule 11-803(1) NMRA, and the second two-and-one-half-minute segment was admissible under the exception for excited utterances, Rule 11-803(2).

**{6}**    The two law enforcement officers who located Defendant administered field sobriety tests and a breath alcohol test. One of the officers, Officer Garcia, had recently completed training in administering field sobriety and breathalyzer tests and was awaiting a physical copy of his certification card. Officer Garcia performed the tests, while being observed and supervised by the other more experienced certified officer, Officer Dunagan. Officer Dunagan used his certification card, but watched while Officer Garcia conducted the tests. Only Officer Dunagan testified at trial.

**{7}**    Defense counsel objected to the admission of the breath alcohol test results claiming that Officer Dunagan's testimony did not sufficiently confirm that all of the foundational requirements in the state health department regulations had been met. Finding compliance with the foundational testing requirements, the metropolitan court admitted the test results.

**{8}**    Defendant appeals her conviction, challenging the metropolitan court's admission into evidence of both segments of the 911 call and of the breath alcohol test results.

## DISCUSSION

**{9}**    We first address the Confrontation Clause questions raised by Defendant concerning the admission into evidence of the two 911 call segments. Concluding that the statements at issue were nontestimonial, and therefore, their admission does not violate the Confrontation Clause, we turn to Defendant's alternative hearsay argument. Defendant claims that both segments of the 911 call admitted into evidence were hearsay, and were not admissible under either the present sense impression or excited utterance exception relied on by the metropolitan court. Finally, we address Defendant's argument that the metropolitan court erred in admitting her breath alcohol test results.

**I.        There Was No Violation of the Confrontation Clause Because the Statements Admitted Into Evidence Were Nontestimonial**

**{10}**    This Court reviews claimed violations of the Confrontation Clause de novo. *State v. Gurule*, 2013-NMSC-025, ¶ 33, 303 P.3d 838. One of the essential principles of confrontation jurisprudence is that an out-of-court statement may not be admitted into evidence if it is testimonial and offered to prove the truth of the matter asserted "unless the declarant is unavailable and the defendant has a prior opportunity to cross-examine the declarant." *State v. Navarette*, 2013-NMSC-003, ¶ 7, 294 P.3d 435.

**{11}**    The United States Supreme Court in *Davis v. Washington*, 547 U.S. 813, 822 (2006), in the context of a 911 call, grappled with the distinction between testimonial and nontestimonial statements, concluding that statements are nontestimonial

when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.

**{12}** The Court observed that a statement is likely nontestimonial if (1) the individual is describing events as they are actually happening rather than describing past events; (2) the individual is facing an ongoing emergency; (3) when viewed objectively, the elicited statements are necessary to resolve a present emergency rather than simply to learn what had happened in the past; and (4) the individual's statements were provided over the phone in an environment that was neither tranquil nor safe. *Id.* at 827. This Court has adopted the *Davis* factors as helpful guidance in analyzing whether statements made during a 911 call are testimonial or nontestimonial. *See State v. Soliz*, 2009-NMCA-079, ¶ 13, 146 N.M. 616, 213 P.3d 520.

**{13}** Looking to the statements from the segments of Koburi's 911 call admitted into evidence and applying this guidance, we conclude that these statements were made primarily for the purpose of addressing a present emergency and were, therefore, nontestimonial. Defendant argues that in the first segment of the 911 call admitted by the metropolitan court, Koburi was relaying past events to the 911 operator, not seeking help with an ongoing emergency. We do not agree. When a declarant describes "events that had just occurred," and those events are necessary to explain the present emergency, the statements serve the primary purpose of the 911 call—to obtain assistance to meet an ongoing emergency. *Soliz*, 2009-NMCA-079, ¶¶ 19, 20. The recording of the 911 call shows that Koburi spent approximately thirty seconds describing what had happened to create the current emergency. The facts conveyed— that Defendant had been drinking, that she had been unconscious in a hot car for over an hour, and had just regained consciousness—are all essential background to enable the 911 operator to evaluate what assistance was needed. Koburi quickly turned to the current circumstances—that Defendant was belligerent, would not leave her car, that she had the car keys and the car was running—the emergency that was the basis of her call. These statements describe events that are occurring at the time of the call, and that constitute an ongoing emergency. The questions from the 911 operator elicited information essential to assess both the seriousness of that emergency and what response was needed. *See State v. Largo*, 2012-NMSC-015, ¶ 19, 278 P.3d 532 (holding questions "targeted to assess the seriousness of the ongoing emergency" and the statements in response are nontestimonial).

**{14}** Defendant argues that there was no ongoing emergency because Koburi "expressed doubt that an ambulance was necessary." Whether there is an emergency, however, is based on an objective inquiry. *See State v. Tsosie*, 2022-NMSC-017, ¶ 36, 516 P.3d 1116. Defendant's belligerent intoxication and threat to begin driving in that intoxicated state objectively posed an imminent danger not only to Defendant but to other drivers on the road and possibly pedestrians. The situation as a whole also fits the last element of the *Davis* guidelines—Koburi's statements "were provided over the phone in an environment that was not tranquil, or even . . . safe." 547 U.S. at 827. Throughout the 911 call, Defendant can be heard angrily yelling in the background. Fear

about Defendant driving in her intoxicated state in the parking lot and hitting individuals or cars is palpable throughout. The call thus is similar to the 911 calls found to be nontestimonial by the United States Supreme Court and our appellate courts.

**{15}** Finally, Defendant argues that any information elicited by the 911 operator after Koburi described Defendant driving out of the parking lot was provided to assist in a criminal investigation and therefore was testimonial. Our Supreme Court has recognized in a situation where the defendant had fled the scene that, "an ongoing emergency does not necessarily cease, rendering the information collected by an interrogator testimonial, as soon as the suspect leaves." *State v. Sisneros*, 2013-NMSC-049, ¶ 11, 314 P.3d 665. Here, as in *Sisneros*, Defendant left behind a car that she had hit in the parking lot and, by leaving the lot, placed in danger motorists on the road. There was no assurance Defendant would not return to the parking lot. The questions asked as Defendant was driving away were directed at tracking Defendant's path so that she could be stopped and injury to others avoided. The 911 operator's questions about a defendant's identity, description, and location "do not suggest an inquiry into past criminal conduct or an effort to prepare a criminal case for investigation or prosecution." *Id.* ¶ 14. All of these questions are necessary to meet an ongoing emergency. *Id.*

**{16}** We conclude that all of the statements admitted into evidence by the metropolitan court from the segments of the 911 call were directed as addressing an ongoing emergency under the guidelines adopted by our courts. They were, therefore, nontestimonial and their admission did not violate the Confrontation Clause.

**II.     There Was No Error in the Admission of Koburi's Statements During the 911 Call as a Present Sense Impression or an Excited Utterance**

**{17}** Defendant next argues that even if Koburi's statements were nontestimonial, the metropolitan court erred in admitting the first one and one-half minutes of Koburi's 911 call under the present sense exception to the hearsay rule and the second two-and-one-half minute segment under the excited utterance exception to the hearsay rule.

**{18}** "We review a [trial] court's admission of evidence for an abuse of discretion." *State v. Imperial*, 2017-NMCA-040, ¶ 14, 392 P.3d 658. "We will not conclude that the [trial] court abused its discretion in admitting evidence pursuant to an exception or an exclusion to the hearsay rule unless the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Largo*, 2012-NMSC-015, ¶ 22 (internal quotation marks and citation omitted).

**A.     The Present Sense Impression Exception**

**{19}** Defendant argues that Koburi's statements in the first minute and one-half of the 911 call were "largely relaying past events" and, therefore, were not properly admitted as present sense impressions. We disagree and explain.

**{20}** Rule 11-803(1) defines a present sense impression as, "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." With the exception of the first thirty seconds of the 911 call, Koburi is directly reporting on what is currently happening with Defendant—that she is conscious, is belligerent, is refusing to leave her car, and has started the car. We see no basis for challenging the admission of these statements as Koburi's present sense impressions: these events were occurring contemporaneously with Koburi's reporting of them.

**{21}** We understand Defendant to challenge only the first thirty seconds of the call, where Koburi reported to the 911 operator that Defendant had been drinking and had been unconscious in her car during the preceding hour. Even assuming, without deciding, that these events were not close enough in time to be admitted as present sense impressions, Defendant has not pointed to any prejudice from the admission of this background information. We see no reasonable probability that the admission of brief background summary contributed to Defendant's conviction and, therefore, conclude that any error was harmless. *See State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110 (holding that a nonconstitutional error in the admission of evidence is not reversible unless there is a reasonable probability that the error contributed to the defendant's conviction).

## B. The Excited Utterance Exception

**{22}** Defendant next argues that the second segment of the 911 call admitted by the metropolitan court was not properly admitted as an excited utterance under Rule 11-803(2). An "excited utterance" is "[a] statement relating to a startling event or condition, made while the declarant was under the stress or excitement that it caused." Rule 11-803(2). "[T]o constitute an excited utterance, the declaration should be spontaneous, made before there is time for fabrication, and made under the stress of the moment." *State v. Flores*, 2010-NMSC-002, ¶ 47, 147 N.M. 542, 226 P.3d 641 (internal quotation marks and citation omitted).

**{23}** Defendant's claim that Koburi's description of Defendant hitting another car as she left the parking lot and drove against traffic are not excited utterances is based on Defendant's assessment of Koburi's emotional state as these events were happening. Defendant argues that Koburi sounds too calm and concludes she was not suffering from "sufficient pain, confusion, nervousness, or emotional strife" to support the court's finding that this segment of the 911 recording was an excited utterance. We do not agree. First, we defer to the metropolitan court's assessment of the witness's mental state. *See State v. Balderama*, 2004-NMSC-008, ¶ 51, 135 N.M. 329, 88 P.3d 845 ("The trial court has wide discretion in determining whether the utterance was spontaneous and made under the influence of an exciting or startling event." (alteration, internal quotation marks, and citation omitted)). This segment of the 911 recording begins with Koburi spontaneously yelling, "Felicia, stop!" as Defendant was driving away. Koburi's description of what is happening is interspersed with spontaneous expletives ("Oh my god"; "This is crazy"; "I can't believe her") and repeated nervous laughter. The events being described are objectively startling. We see no abuse of

discretion in the metropolitan court's decision to admit this evidence under the excited utterance exception to the hearsay rule.

**{24}** Defendant also argues that even if the description of Defendant hitting cars and driving into traffic was properly admitted as an excited utterance, Koburi's answers about Defendant's address and license plate number were not excited utterances. Even assuming without deciding that they were not, the admission of these statements was harmless error and does not require reversal. We see no reasonable probability that the admission of these few facts from the 911 call contributed to Defendant's conviction. *See Tollardo*, 2012-NMSC-008, ¶ 36. Although the license number was mentioned as a factor in confirming Defendant's identity, Defendant's identity was not an issue at trial: it was confirmed by other admissible evidence. The admission of Koburi's memory of the license plate number was, therefore, harmless error.

### III.   The Testimony Established an Adequate Foundation for the Admission of the Breath Alcohol Test Results

**{25}** Defendant finally argues that the court abused its discretion in admitting her breath alcohol test results because the testimony of Officer Dunagan, the supervising officer, failed to establish two foundational requirements included in the state health department regulations, NMAC 7.33.2.15(B)(2): (1) that the officer who conducted the tests was a certified operator, and (2) that there was compliance with the full deprivation period. We disagree and explain.

**{26}** Prior to the admission of breath alcohol test results, a court must find by a preponderance of the evidence that there was compliance with all accuracy ensuring state health department regulations. *See State v. Willie*, 2009-NMSC-037, ¶ 12, 146 N.M. 481, 212 P.3d 369. In making this determination, the trial court can rely on hearsay evidence. *See State v. Martinez*, 2007-NMSC-025, ¶ 23, 141 N.M. 713, 160 P.3d 894. We review a trial court's decision on whether to admit this evidence for abuse of discretion. *See id.* ¶ 7.

**{27}** NMAC 7.33.2.15(B)(2) requires breath samples to be "collected and analyzed by certified operators . . . after the certified operator . . . has ascertained that the subject has not had anything to eat, drink or smoke for at least twenty minutes prior to collection of the first breath sample." Officer Dunagan testified that Officer Garcia, who did not testify, was certified but was awaiting a physical copy of his state-issued certification card. Because hearsay testimony is permissible, this testimony met the preponderance of the evidence standard required to establish that Officer Garcia was a certified operator.

**{28}** Defendant argues alternatively that as the certified operator whose card was used to operate the breathalyzer, Officer Dunagan, should have checked Defendant's mouth and been certain of the start time and duration of the deprivation period. We disagree. NMAC 7.33.2.15(B)(2), the provision of state health department regulation relied on by Defendant does not require an operator "to either ask a person suspected

of drunk driving whether he or she has anything in his or her mouth or to inspect a suspect's mouth for food or other substances prior to initiating the required twenty-minute deprivation period." *Willie*, 2009-NMSC-037, ¶ 15. The fact that Defendant had been handcuffed for the duration of the deprivation period further supports a determination that Defendant had not placed anything in her mouth. Finding that a preponderance of the evidence supports that NMAC 7.33.2.15(B)(2) was properly complied with, we conclude that the trial court did not abuse its discretion in admitting Defendant's breath alcohol test results.

**CONCLUSION**

**{29}**   For the foregoing reasons, we affirm.

**{30}   IT IS SO ORDERED.**

**JANE B. YOHALEM, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**